# George Ruppel v. Allegheny Valley Railway, Appellant.

*Common carriers—Railroads—Negligence—Bill of lading—Measure of damages.*

A stipulation in a bill of lading that " the amount of any loss or damage shall be computed at the value of the property, at the place and time of shipment under this bill of lading," is invalid where the loss or damage has been occasioned by the negligence of the carrier. In such a case the measure of damages for the loss of goods is their value at the point of destination.

The fact that the point of destination is not on the line of the carrier whose negligence caused the loss, is immaterial, where it appears that the defendant accepted the goods for transportation safely, on a through rate, to the point of destination.

*Common carriers—Negligence—Evidence—Question for jury.*

Plaintiff had a car load of potatoes consigned to him at Pittsburg, from New Orleans. They were about six days on the way, and, before their arrival, he had ordered the car to be transferred to defendant's road, for shipment to Buffalo, where it arrived on the fifth day after leaving Pittsburg. The potatoes were then much decayed. The car was not inspected at Pittsburg, and the evidence showed that it was delayed about three days en route to Buffalo, on account of its being out of repair. There was also evidence of experienced dealers that the decay in the potatoes had commenced within three days prior to their arrival at Buffalo. *Held*, that there was sufficient evidence of negligence on the part of the defendant and of consequent loss to plaintiff to submit to the jury.

Argued Oct. 31, 1894. Appeal, No. 210, Oct. T., 1894, by defendant from judgment of C. P. No. 3, Allegheny Co., May T., 1893, No. 185, on verdict for plaintiff. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the value of a car load of potatoes alleged to have been lost through the negligence of defendant. Before McCLUNG, J.

At the trial it appeared that the goods had been consigned to plaintiff at Pittsburg from New Orleans. At Pittsburg plaintiff ordered the car to be transferred to defendant's road for shipment to Buffalo, under a bill of lading which contained, inter alia, the following provisions :

" 1. No carrier or party in possession of all or any of the property herein described, shall be liable for any loss thereof or damage thereto, by causes beyond its control; or by floods or by fire from any cause or wheresoever occurring; or by riots, strikes or stoppage of labor; or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet or decay; or from any cause if it be necessary or is usual to carry such property upon open cars.

"2. No carrier is bound to carry said property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit. Every carrier shall have the right, in case of necessity, to forward said property by any railroad or route between the point of shipment and the point to which the rate is given.

" 3. No carrier shall be liable for loss or damage not occur-

ring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee. The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation."

The car reached Buffalo three days later than the time it would have reached that city had there been no delay. The evidence relating to the alleged negligence of the defendant in causing the delay, is stated in the opinion of the Supreme Court.

George Ruppel, the plaintiff, being upon the witness stand, the following questions were propounded to him by plaintiff's counsel:

Mr. Yost: "Q. Did you inquire on the next day, Saturday, when you actually received the bill of lading from the person in charge at the freight station, from the person who gave you that bill of lading, and with whom you dealt in regard to sending this car, as to what time the car should arrive in Buffalo? A. I did. Q. What answer did he give you?"

Objected to as incompetent.

Objection overruled. Bill of exceptions sealed for defendant.

A. "He told me he had ample time to make delivery Monday morning. Q. That was the following Monday? A. Yes, sir."

A witness, H. J. McCracken, being upon the witness stand, the following questions were propounded to him by plaintiff's counsel:

"Q. If a carload of freight, such as potatoes, were shipped to Buffalo packed in barrels, properly packed with openings for ventilation, and so on, shipped in June in a car such as Mr. Ruppel has described—I believe you heard his testimony—from Pittsburg to Buffalo, and arrived there in the ordinary time, as you have stated, in good sound condition when shipped, would they be damaged by the shipment and delivery at that time?"

Objected to as incompetent and irrelevant, this not being a case for expert testimony.

The Court: " I think we ought not to exclude this testimony."
Objection overruled, and bill sealed for defendant. [6]

Mr. Yost: " Q. I will correct it this far, to say, that if the potatoes were in good sound condition at two o'clock on the previous day on Friday, and with that correction I will ask for your opinion on it.   A. If in good condition at two o'clock on Friday and without smell in the car, I should think they would arrive in number one condition on Monday morning.   Q. If shipped on Saturday ?   A. Yes, sir."

The court charged as follows :

" The goods came here from New Orleans in a car of the Illinois Central Road, and they were reshipped by the Allegheny Valley Road and its connection, the Western New York & Pennsylvania Road, to Buffalo, New York, the Allegheny Valley Road receiving it here for shipment to Buffalo.   The goods were received with the understanding that they were to be shipped to Buffalo, not to an intermediate point, but at the same time the company which received them was not to be responsible for the default of the company to which it delivered them at Oil City, half way to the city of Buffalo.   It is alleged that they were unduly delayed, and that through that delay the potatoes rotted, so that a large portion of their value was destroyed—that their value was reduced perhaps to one third.   There was no agreement between the parties as to the time at which these potatoes should arrive at the city of Buffalo—only the implied agreement that they should be forwarded with reasonable dispatch, and perhaps the contract itself uses practically the same terms, but those terms do not vary the obligation which was upon the company.   That was the only obligation—to forward them with reasonable dispatch.

" In determining what reasonable dispatch is, you regard all the circumstances of the case.   You regard the exigencies of the defendant company's business, you regard the possibilities of accident, and at the same time you regard the nature of the goods shipped and all the circumstances which surrounded the company when they undertook to convey these goods ; and you determine what would be reasonable dispatch.   You have the statement of the agent of the defendant company said to have been made to the shipper as to the time at which goods would arrive in Buffalo, and you also have other testimony of

parties who were in the habit of shipping. That testimony, even the testimony of the agent was not admitted for the purpose of showing any agreement upon the part of the company to take them there by that time, but simply as indicating what was a reasonable time under ordinary circumstances, to enable you to determine whether or not the time which was actually taken, which seems to have been some four or five days, was unreasonable or not. Without some testimony of that sort, as a matter of course, the jury has no means of determining what was reasonable dispatch; but I am cautioning you here against assuming that there was an agreement upon the part of this defendant company to take those potatoes there by Monday. There was no absolute agreement to take them there unless it could be done in the exercise of the care which was demanded of them, and in the exercise of due effort to get them there. That was the only obligation that they were under.

" [If, however, they failed to forward them with reasonable despatch, and the plaintiff suffered damage thereby, they would be liable to him; so that the questions that you have to determine are, first, whether or not they failed to fulfill their contract, failed to forward these goods as promptly as they could in the exercise of reasonable care under the circumstances which surrounded them, and under the occurrences which happened; then, in the second place, whether or not the plaintiff suffered damage, and if he did suffer damage, how much that damage amounted to.] [7] It makes no difference if they did delay, if that delay did not cause damage to the plaintiff. As a matter of course, the law does not undertake to punish a defendant in these matters. The only purpose of permitting these suits is to reimburse the party who suffers damage, and even if the contract had been violated, the defendant could not be mulcted at least for more than nominal damages.

" [But the plaintiff alleges that the defendant negligently, carelessly and unduly delayed the shipment of these goods, and that is the principal question for you to determine. You have the facts all before you. There is no particular dispute about the facts as to how this car was delayed. Now, was the defendant negligent in that delay? It would appear here that ordinarily this car would have gotten to Oil City on the morning, I believe, of the 12th, and would probably have passed on

sometime during that day upon the other road and reached Buffalo during Monday. The witnesses differ as to whether it would have gotten there Monday morning or not until Monday evening, but no one disputes that if there had been no accident it would have gotten there by Monday evening at the latest. It appears that it was not actually delivered to the Western New York & Pennsylvania Company at Oil City until some time upon the afternoon of Tuesday. Now, was the defendant company excusable for this delay, and if it was not excusable, was that the cause of the damage to these potatoes? That is practically the simple question before you. It was the duty of this defendant company to use due care with regard to the car at the time that it received it. . Under a general arrangement amongst the railroad companies, it took this same car in which the goods were then loaded, and used it to transport them to Buffalo. It was its duty to use due care, reasonable care, in inspecting that car to find out if it was in proper order for that journey at the time it started. Did it exercise that care? It was not bound to remake the car, it was not bound to go over every detail of the car and examine everything about it, because that would not be practicable. It would not be practicable to take out the brasses, for instance, and examine all the journals. It was only bound to use due and reasonable care in inspecting the car. If it did that, and this car seemed, under that inspection, to be in proper condition, or, if that inspection revealed to them that it was in proper condition, then it was proper for them to start with the car; and then the question of care would arise as to the transportation of the car after it had been put upon its journey. If they did exercise the proper care before starting with the car, did they exercise the proper care after it was developed that there was something wrong with the car, after it was determined that it had this hot box? That is not a usual occurrence, I believe, with cars, that is, the happening of the heating of a box, but it is not, I presume, an extraordinary occurrence at all. It is something that does occur and no doubt does occur even when the best of care is taken. If they found that it had a hot box, then they were bound to use the care which those circumstances demanded in order to get the goods forward. They were bound, of course, still to transport them as promptly as possible, but they were to be allowed for the delay

that would occur by reason of an accident, which was not the
result of their negligence, and if they then used all the effort
which would be reasonably required of them under the circum-
stances, they would be held blameless, and they could not be
held liable for the damage that would occur. In this matter,
as in others, you will take into account all the circumstances.
There are some circumstances under which they would be
bound to greater care than others. If they had specially per-
ishable goods, there might be some circumstances under which,
rather than submit to even a short delay, they ought to trans-
fer the goods into another car, if one was attainable; but you
cannot apply any rule of ideal perfection to these matters,
because it is not possible that a railroad company should always
have agents of the highest degree of judgment running its cars,
and you have to adopt the reasonable rule which the law sug-
gests, that is,—were the efforts made which could reasonably
be expected under the circumstances, upon the part of the rea-
sonably competent men whom they are bound to employ?
You will examine into the question as to whether or not they
were negligent at Kittanning as to the occurrences between
this and Kittanning, and then again at the next stopping place,
and still again at Oil City, where it seems that the car had
again to be repaired. It would seem that this car was unusu-
ally unfortunate on this trip. Was this delay simply on account
of that which was purely an accident, or was it by reason of
the negligence of the defendant? If it was nothing but a pure
accident without there being negligence, then it matters not
what became of the potatoes; the owner of them would have
to suffer the loss.] [4] If, however, you think that they were
negligent, then the question is, did that negligence cause the
loss to these potatoes? It is perhaps beyond possibility for
you to determine with accuracy whether or not these potatoes
would have been in perfect condition when they got to Buffalo
if they had been transported without any delay, but it is one
of those difficulties which often presents itself to the jury.
They have to determine these questions. Somebody has to
determine them, and the lot frequently falls to you. If you
find that they would have been injured to the same extent
that they were without this delay, then, of course the plaintiff
cannot recover. If you find that they would have been injured

to some extent, but not to the extent that they were injured, then he could only recover for the additional injury. But, if you find that the whole injury was due to the default of the defendant company, then it would be liable for his loss.

" You will recollect all the time that this defendant company, the Allegheny Valley Railroad Company, is not responsible for any delay upon the part of the other railroad company. It seems that the goods were delivered to the other railroad company in time for the train upon Tuesday evening. Of course, if they negligently delayed so as to lose a connection upon the other road they could be fairly charged with the delay between the two trains. If you find that there was no unnecessary delay, no delay through negligence, then the verdict should be for the defendant.

" If, however, there was negligence and the damage resulted from that negligence, then the question is as to the measure of damages.

" The bill of lading here would seem to restrict the measure to the market value of the goods in this market. It has been held, however, that a common carrier cannot, in case the loss is through its negligence, limit its liability in that way, and we so instruct you here. If the defendant company was liable from any cause other than negligence, then the measure of damages would be the one stated in the bill of lading and in the third point submitted to me by the counsel for the defendant. It would be the market value of the goods here, that is, you would charge them with the market value of the goods here, and the freight to Buffalo, and credit them with the $161 which they received for the goods there, that is, if the loss did not result from their negligence. But if it resulted from their negligence, then the law fixes the measure of damages, and that damage would depend, under the circumstances of the case, upon the Buffalo market, and not upon the market here. The goods were to be delivered in Buffalo. They were first to come into the possession of the plaintiff in Buffalo, and they did first come into his possession and under his control in Buffalo, so that the measure of damages in that case would be what they would have been worth in Buffalo had they arrived in the condition that they would have been in if they had gone on promptly. You will charge the defendant with that, giving

them credit with the amount that was realized, $161.80. In that case you would, of course, have nothing to do with the freight bill, because the plaintiff would have to pay that if the goods had gotten there in good condition.

The defendant's points were among others as follows:

"1. That under all the evidence in the case the verdict should be in favor of the defendant. *Answer:* This is refused. The question is left to the jury.

"2. That if the jury find from the evidence that it was necessary to make the repairs to the car, as recited by defendant's witnesses, and that such repairs were made with reasonable dispatch, the verdict should be for the defendant. *Answer:* This is refused as put. Their duty was not simply and solely as to the making of repairs. They had a duty as to the inspection of the car to begin with, and they had a duty with respect to the forwarding of the car under some circumstances, at least, perhaps, beyond that of merely making the repairs, but outside of the inspection of the car, the point would probably be understood by the jury as presenting the law fairly." [2]

"3. The measure of damages in this case is the market value of the potatoes at the time and place of shipment and the freight paid to Buffalo, less the amount received for the potatoes at Buffalo. *Answer:* That, gentlemen, is the measure of damages, provided this loss was not the result of negligence upon the part of the defendant company. If they were liable for this loss, but it was not the result of negligence, if it was simply the result of a failure of judgment, perhaps in some employee, that would be the measure of damages. But in case it was the result of negligence, then the Buffalo market would afford the measure of damages. As I have said, in that case you would simply find the value in the Buffalo market, and deduct the amount received there. You have, then, nothing to do with the freight bill." [3]

Verdict and judgment for plaintiff for $464. Defendant appealed.

*Errors assigned* were (1–4, 7) above instructions, quoting them; (5–6) rulings on evidence, quoting the bill of exceptions.

*George B. Gordon, William Scott* with him, for appellant.—
The burden of proving negligence was on the plaintiff: Farn-
ham v. Camden & Amboy Ry., 55 Pa. 53; Buck v. P. R. R.,
150 Pa. 170.

The defendants used reasonable dispatch and were not guilty
of negligence: Coke on Litt. 50; Hutchinson on Carriers, sec.
328; Briddon v. Great Northern Ry., 28 L. J. Ex. (N. S.) 51;
Empire Transportation Co. v. Wallace, 68 Pa. 302; Gersmer
v. Lake Shore Ry., 102 N. Y. 563; Parsons v. Hardy, 14
Wend. 215; Vicksburg Ry. v. Rogsdale, 46 Miss. 458; Bow-
man v. Teall, 23 Wend. 206; Conger v. R. R., 6 Duer, 375;
Hutchinson on Carriers, sec. 330; Raiordon v. Pa. R. R., 119
Pa. 577; Buck v. P. R. R., 150 Pa. 170; Camden & Amboy
Ry. v. Farnham, 55 Pa. 53; Patterson v. Clyde, 67 Pa. 500;
Huey v. Gahlenbech, 121 Pa. 238; Brownfield v. Hughes, 128
Pa. 194; Ewing v. P. C. & St. L. Ry., 147 Pa. 43; Addison
on Torts, § 1338.

In this case the court's instruction that the measure of dam-
ages was the value at Buffalo was clearly wrong; in Pennsyl-
vania it is the value at Oil City: Pa. Ry. Co. v. Pithole Plank
Road Co., 71 Pa. 350; 2 Sedgwick on Damages, sec. 846;
Marshall v. N. Y. C. Ry., 45 Barb. 502.

There are some decisions which seem to intimate that the
true measure is the market value at the nearest market to the
place where the negligent act was committed: Brown v. Gil-
more, 92 Pa. 40; Oil City Co. v. P. R. R., 2 Pitts. 477; Weil-
ler v. Penna. R. R., 134 Pa. 310.

Servants of corporations are not ordinarily empowered to
make any declarations which will convict the company of neg-
ligence: Oil City Fuel Supply v. Boundy, 122 Pa. 449;
American S. S. Co. v. Landreth, 102 Pa. 131; Shaffer v. Haish,
110 Pa. 575.

Expert testimony was not admissible in this case: Graham
v. Penna. Co., 139 Pa. 149.

*William Yost,* for appellee.—A railroad company is bound to
provide cars reasonably fit for the conveyance of the goods it
undertakes to carry; and it will be liable for injury from
defects of a car, even if it belongs to another company, if it
adopts it for the purpose of its own traffic: Wood on Railroads,

2d, ed., sec. 430, p. 1898: Patterson on Railway Accident Law, p. 238; Hutchinson on Carriers, sec. 505; N. Y. C. & H. R. R. v. Eby, 22 W. N. C. 92; Buck v. Penna. R. R., 150 Pa. 170; Empire Transportation Co. v. Wamsutta Oil Co., 63 Pa. 14.

In an action on a bill of lading, for a loss in carrying goods, the measure of damages is the net value of the goods at the point of destination: Gillingham v. Dempsey, 2, 12 S. & R. 183; 3 Sutherland on Damages, 246; Sisson v. Cleveland & T. R. R., 14 Mich. 489; 2 Sedgwick on Damages, 846; Erie Ry. v. Lockwood, 28 Ohio, 358; Penna. R. R. v. Titusville Plank Road Co., 71 Pa. 355.

A carrier cannot limit its liability as against its own negligence: American Express Co. v. Sands, 55 Pa. 140; Grogan & Merz v. Adams Express Co., 114 Pa. 523; Weiller v. P. R. R., 134 Pa. 310.

The presumption is, in the absence of other evidence, that the value of the goods at the point of shipment is less than at the point of destination: 2 Am. & Eng. Ency. of Law, 906; Rome R. R. Co. v. Sloan, 39 Ga. 636; Findley v. Richmond & D. R. R., 9 Am. & Eng. R. R. Cases, 31; Peterson v. Case, 18 Am. & Eng. R. R. Cases, 578.

The measure of damages is not affected by the form of action. The leading case in Pennsylvania on the invalidity of such restriction in a bill of lading (as well as nearly all the cases following it) was an action of assumpsit: Am. Ex. Co. v. Sands, 55 Pa. 140; Phoenix Pot Works v. P. & L. E. R. R., 139 Pa. 284; Buck v. P. R. R., 150 Pa. 170.

Freight agents are presumed to have authority, in the absence of notice to the public of any limitations upon their authority in that respect, to give information as to expedition of transportation and delivery: Easton v. Dudley, 45 Am. & Eng. R. R. Cases, 341; 1 Wood on Railroads, (2d ed.) sec. 165, p. 507 and 508; Deming v. R. R., 48 N. H. 457: Brooke v. R. R., 108 Pa. 545.

OPINION BY MR. JUSTICE DEAN, April 1, 1895:

Ruppel, the plaintiff, by wire, had consigned to him at Pittsburg, from New Orleans, a car load of potatoes; they were shipped 4th of June, and reached Pittsburg 10th June, 1892, being about six days on the way; before the car arrived, plain-

tiff had ordered its transfer to defendant's road for shipment to Buffalo, and when it came into the yard, he, in company with two others, examined the potatoes, which were packed in barrels, and pronounced them in good condition.  The same day the car was transferred to defendant's road and he, the next morning, took from defendant a bill of lading for shipment to Buffalo ; the bill stated quantity, 164 barrels potatoes ; advance freight charge, $117.67.   It also contained this stipulation : " The amount of any loss or damage . . . . shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon." On the evening of same day, the 11th, the car was made part of a train which was started for Buffalo.   About thirty miles out of Pittsburg it was discovered to have a hot box ; in consequence it was side tracked at Kittanning, forty-two miles from Pittsburg, for repairs ; this was about midnight of Saturday the 11th.   The car remained at Kittanning without repairs until Monday morning the 13th, when it was run to East Brady, twenty-three miles towards its destination, where an examination showed the brass of a journal to be broken ; this was replaced in about thirty minutes.   On Monday, in the evening, the car was again coupled to a train on its way to destination, and arrived at Oil City early on the next morning, Tuesday the 14th.   Here it had to be transferred to a connecting line, the Western New York and Pennsylvania, to reach destination.   The inspectors of this road refused to receive it unless repaired ; it was again delayed until repaired ; in the afternoon of the same day it was again started for Buffalo, where it was delivered to Ruppel's agent, Thursday morning, June 16th.   Many of the potatoes were then found to be decayed and wholly worthless, and the remainder considerably damaged.

The plaintiff brought suit for damages, averring negligence of defendant, in not, under the circumstances, moving the car with reasonable dispatch to destination.   The court submitted the question of negligence to the jury, who found for plaintiff, and defendant appeals.   There are seven assignments of error which in substance embrace three questions : 1. Was there such evidence of negligence as warranted the court in submitting that question to the jury ?   2. If so, was there sufficient evidence that this negligence caused the damage complained of ?

3. Was the measure of damage adopted by the court, under this contract, correct?

This written contract only expresses what the law implies on the part of the common carrier, namely, that goods which it accepts, shall be transported with reasonable dispatch towards destination. Whether the contract has been kept is a question of fact. If there be contradictory evidence, or if the facts warrant opposite inferences the case must go to the jury. Here it was undisputed, that in the usual course of transportation this car ought to have reached Buffalo on Monday; other cars which started with it on the same train did arrive at that place on Monday; this car was delivered on Thursday, three days later; in about the same time from Pittsburg to Buffalo as from New Orleans to Pittsburg. It was not an unwarranted assumption on part of plaintiff, that reasonable dispatch was the ordinary and usual time taken for the movement of such freight between those points. Appellant's counsel argues in pressing his assignment that there was not sufficient evidence of negligence; in his view there is, perhaps, no more accurate statement of what is reasonable dispatch, than that of POLLOCK, C. B., in Briddon v. G. N. Ry. Co., 28 L. J. Ex. (N. S.) 51: " The contract was to carry the cattle to Nottingham without delay, and in a reasonable time, under ordinary circumstances." Here it is argued, under ordinary circumstances the car would have been delivered on Monday, but because of the happening of a circumstance which could not be provided against, for it could not be foreseen—a hot box—it was not delivered until Thursday. There was evidence, that usually no degree of care in inspection or operation can guard against this obstruction to speedy transportation; that a car in apparently good condition as to journals and axles, and properly lubricated, will at times have a hot box. And in so far as the delay was necessary because of a hot box, which could not with ordinary care have been provided against, the dispatch was reasonable. But then plaintiff replies to this, appellant accepted this car at Pittsburg after it had made the trip from New Orleans without inspection. The car inspector of defendant at East Brady, where it was repaired, testified the brass of the journal was broken, and that he thought the brass in the first place had not fitted the journal; that it was not the proper pattern. The car repairman for defendant at Oil City,

where this car had been rejected by the connecting road, testified it had also had a broken center plate and bolt and damaged timbers.   With a broken brass and the other injuries, at this distance from Pittsburg, after a journey of more than 1000 miles to Pittsburg, and no proof of inspection there, the appellee argued that it was out of repair and defective before leaving Pittsburg; that ordinary care required inspection and repair at that point, or a transfer of the potatoes to another car.   It is settled, " a railroad company is bound to provide cars reasonably fit for the conveyance of the goods it undertakes to carry, and that the carrier owes the same duty of inspection of cars received from another road and run over its own lines, as in respect to its own cars: " Wood on Railroads, sec. 430 ; Patterson on Railway Accident Law, p. 238.   To the same effect are all the authorities in this country and England.   Whether the cause of this hot box existed, and by reasonable inspection could have been detected in Pittsburg, was a question for the jury on the evidence.   The court could not weigh it to determine the truth.   Clear and full instructions were given on this point, and we see no error in the submission.

As to whether the delay resulted in the loss, the evidence on that point, though not clear, is not purely conjectural.   No less than three witnesses, of experience in shipping and dealing in potatoes, testify in substance, that the condition of these when the car was opened at Buffalo indicated, that decay had commenced within two or three days.   If the loss resulted from not being taken out of the car two or three days sooner, and these two or three days were beyond that reasonable time which under the circumstances the law allowed the carrier, the defendant was answerable for the loss.   This question was also properly submitted to the jury on the evidence.

How is the loss to be measured?   The contract stipulates that the market price of the potatoes at Pittsburg at date of shipment is to be the measure of damages.   If the loss be not attributable to the negligence of the carrier, then this condition of the contract is binding on the consignor.   There is no rule of public policy which forbids it.   But the verdict of the jury has determined as a fact that the loss was occasioned by the negligence of defendant.   The carrier cannot by contract in this state limit his liability in case of negligence.   The law

on this subject is so clearly stated by our brother WILLIAMS, and so amply vindicated by a citation of authorities both of this country and in England, in the late case of Willock v. The Railroad, 166 Pa. 184, that repetition is unnecessary. And the general principle announced in that case is conceded by counsel for appellant, but it is argued it has no application here; this stipulation it is urged is not to relieve the carrier from any liability for negligence, but was adopted to avoid the uncertainty which would otherwise be incident to proper proof of loss. If this were the object of the stipulation there is no public policy which would avoid it. The trouble with this view, however, is that the condition is palpably a limitation of or reduction on the loss of the shipper. The sole inducement to shipment of marketable commodities is the higher price at point of destination. This alone creates and stimulates international, interstate and domestic trade. Railroads and all other common carriers would have but lean incomes if this were not so. The plain effect of it is, not alone the avoidance of inconvenience and uncertainty in the demand, but a restriction in the amount of it, a reduction in the real loss. It is therefore void.

The fact that Buffalo was not on defendant's line and that its terminus was Oil City, does not in view of this contract and the facts fix the market price at Oil City as the measure of damages. Defendant accepted the car for transportation safely to Buffalo, and charged a through freight rate per 100 pounds from Pittsburg to that point; it was not answerable for any default or neglect beyond its own line, but it undertook to carry safely and with reasonable dispatch on its own line, and deliver to the connecting road on the route to destination. The verdict of the jury finds it did not carry with reasonable dispatch on its own line towards destination, and that this caused the damage sustained at Buffalo; the loss there is therefore the measure of damages. Pa. R. R. Co. v. Plank Road Co., 71 Pa. 350, cited and relied on by appellant is clearly distinguishable from this case. The contract averred there on part of the company was to carry the lumber from sidings on its own road to Corry, at the end of it; from whence it was to be transported by the Oil Creek railroad to Titusville, twenty-six miles further. The plaintiffs did not claim there was any agreement,

express or implied, to forward the lumber by delivery to a connecting road, but only that defendant was bound to transport to Corry; and further averred failure in this particular as the cause of the damage, and then that the measure of the damage was the loss at Titusville. Having that contract in view, this court said: "What then ought to be the measure of damages on the failure of duty of the railroad company to transport to Corry? The rule is compensation; such damage as might reasonably have been anticipated, and within view of the parties."

In this case the shipment is by the bill of lading from Pittsburg to Buffalo on a through rate; Oil City is not mentioned. This question now raised does not seem to have occurred to appellant at the trial in the court below; there was no evidence concerning it, and it was not mentioned in the written points. The only instruction asked on the subject in this particular is in defendant's third point, thus: "The measure of damages in this case is the market value of the potatoes at the time and place of shipment, and the freight paid to Buffalo, less the amount received for the potatoes at Buffalo."

This the court affirmed, unless, the loss resulted from the negligence of defendant, in which case the Buffalo market would determine the measure of damages. But even if it had been raised by a prayer on part of appellant for special instructions, under this contract, and "what reasonably might have been anticipated, and within view of the parties," it ought not to have been affirmed.

What we have said disposes of all the assignments of error demanding notice. The judgment is affirmed.

MITCHELL, J., dissents from so much of this opinion as relates to the measure of damages.