## Allen *v.* Adams Express Co., Appellant.

*Common carriers—Express companies—Shipments lost in transit —Negligence—Value of shipment—Evidence.*

In an action of assumpsit against an express company, for failure to deliver property entrusted to its care, the measure of damages is the value of the shipment, at the point of destination, at the time the consignment should have been delivered.

Where commodities have a particular value, determinable by specific sales, such sales are evidence of the value of the shipment,

at the time it should have been delivered. Market price is evidence of value, but property may be valuable, although it may not be so generally dealt in that it can be said to have a recognized market price. When property is, of such a character, the price at which that specific lot will sell for at any particular place determines its value.

Argued December 15, 1920. Appeal, No. 314, Oct. T., 1920, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1917, No. 540, on verdict for plaintiff in the case of Daniel V. Allen, trading as Allen & Company, v. Adams Express Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit against common carrier for failure to deliver a shipment consigned to its care. Before SHOEMAKER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $974.25 and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court and refusal of defendant's motion for a new trial.

*William A. Schnader,* and with him *Rupert C. Schaeffer, Jr.,* and *Thomas DeWitt Cuyler,* for appellant.

*Joseph H. Taulane,* for appellee.

OPINION BY PORTER, J., July 14, 1921:

The plaintiff delivered to the defendant company, on December 10, 1916, at Philadelphia, a shipment consisting of 300 pounds of dye stuff, to wit, Direct Blue 2-B, to be carried by the defendant, as a common carrier, to Boston, Mass., and there delivered to I. Levenstein & Co. The shipping receipt, issued by defendant company, stated the value of the merchandise to be

$825. The defendant failed to make delivery of the package, which seems to have been lost; the plaintiff made claim in writing on the defendant for the loss of the shipment on January 12, 1917, and subsequently brought this action of assumpsit to recover the value thereof. The plaintiff in his statement averred that the market price of the dye stuff at the time of shipment was $2.75 per pound. The affidavit of defense denied that "the market price of Direct Blue 2-B dye stuff on December 19, 1916, was $2.75 per pound, but avers on the contrary that the market price thereof was $2 per pound." The only question in dispute under the pleadings was as to the value of the lost package. The plaintiff recovered a verdict and judgment in the court below and the defendant appeals.

The learned counsel representing the appellant have thus stated in their paper-book what they deem to be the question involved in this case: "In an action against a common carrier for failure to deliver is the measure of damages the market value of the material at the point of shipment at the time shipment was made or the value of the shipment at the point of destination at the time the shipment should have been delivered?" There can be but one answer, under the law of Pennsylvania, to the question thus stated. The measure of damages in such a case is the value of the shipment at the point of destination at the time the shipment should have been delivered. The damage of the plaintiff is the loss which he has suffered by the nondelivery of his goods at the place of destination, and that loss is the net price which the goods would have brought at that place: Gillingham v. Dempsey, 12 S. & R. 188; Ruppel v. Allegheny Valley Ry., 167 Pa. 166. The above statement of the question involved does not, however, accurately define the position taken by the defendant at the trial in the court below. The contention of the defendant there was that there being no evidence as to a generally prevailing market price for this particular dye stuff, in Boston, at

the time in question, the verdict must be for the defendant. When a commodity is generally and extensively dealt in, as are wheat, corn, potatoes and cotton, its market price is evidence and in some cases it may be assumed to be the equivalent of its value at any particular place. Beef cattle are sold in Chicago at the market rate per one hundred pounds, while such cattle on the farm are presumably worth the amount which can be realized for them in Chicago, less a reasonable allowance for the cost, risk and trouble involved in transportation to the markets, but cattle and horses desirable for breeding purposes have a value dependent upon their individual qualities, so that it cannot be said that the value of any individual is to be fixed according to some prevailing market price. Market price is evidence of value, but property may be valuable, although it may not be so generally dealt in that it can be said to have a recognized market price. When property is of such a character the price which that specific lot will sell for, at any particular place, determines its value. The uncontradicted evidence in this case, if believed, established that the value of any particular lot of this dye stuff could only be determined by an analysis. The plaintiff testified: "You can take a powder and look at it, and unless you analyze it, it may be there are 50% of color, and 50 or 75% of salts. You or no other man can tell unless you analyze it." He testified that some colors, at the time in question, were selling at $3 a pound, others at $5 a pound, and some for $6 a pound. He testified that Levenstein, to whom he shipped the article, was the only market for this particular blue; that he submitted a sample of this dye to Levenstein, who had ordered this particular lot to be shipped and agreed to pay for it $2.75 per pound and pay the express charges to Boston. If this testimony was true the price which Levenstein paid, in Boston, was the market price, for Levenstein was the market and the only market. The plaintiff testified that the price of this dye stuff did not

depreciate for more than thirty days after he delivered the shipment to the defendant and that, on January 29, 1917, he sold to Levenstein six hundred pounds of the dye at the same price.    The sale of the lot which this defendant failed to deliver was made over the telephone, the representative of Levenstein being then in Boston, the delivery was to be made in Boston and Levenstein was to pay the freight.    This was certainly evidence of the value of the dye stuff in Boston at that time.    There was no evidence which would warrant even a suspicion that the entire transaction was not in good faith.    The defendant did not attempt to produce any evidence tending to show that the dye stuff could have been bought in either Philadelphia or Boston at a rate less per pound than the plaintiff asserted it to have been worth.    The learned judge did not err in charging the jury that if they believed the evidence the plaintiff was entitled to recover the amount which Levenstein was to pay him for the dye stuff.

The judgment is affirmed.