## Jakway v. Lehigh Valley Railroad Co., Appellant.

Argued November 20, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*J. Roy Lilley,* and with him *William P. Wilson,* for appellant.—A shipper may not recover for delay in transporting an article for sale without proof of market value at the time and place at which delivery should have been made: Barrett v. Van Pelt, 268 U. S. 85; 4 R. C. L. 930, Sec. 389; Allen v. Adams Express Co., 77 Pa. Superior Ct. 174; American Ry. Ex. Co. v. Euting, etc. Co., 292 Fed. 335.

The shipper in an action for delay may not question the scheduled route or facilities of the carrier in the absence of an allegation of action by the Interstate Commerce Commission: Great Northern Ry. Co. v. Merchants, etc. Co., 259 U. S. 285.

*William G. Schrier,* for appellee.—A shipper of livestock, diminished and depreciated in quantity and quality by reason of defendant's failure to transport with reasonable dispatch, may recover damages by showing the value of such depreciation in quantity and quality: Alexander v. Pa. Ry. Co., 7 Pa. Superior Ct. 183; Joynes v. Pa. R. R. Co., 235 Pa. 232; Sturgeon v. St. Louis, K. C. & N. Ry. Co., 65 Mo. 569.

OPINION BY LINN, J., February 28, 1930:

Two complaints require consideration: 1. An instruction concerning the measure of damages; and 2,

the refusal to affirm a point concerning transportation facilities.

Plaintiff brought trespass for damage resulting from negligent delay in transporting 6 shipments of livestock—a number of carload lots—made by him at different times, consigned to himself from stations on defendant's road in Bradford County, Pennsylvania, to points on connecting roads,—5 being interstate shipments, and 1 intrastate. Each shipment is the subject of separate averment in the statement of claim, and of each, it is alleged "that by reason of defendant's and connecting carrier's said delay in transporting and delivering said livestock, and the negligent way in which .defendant and connecting carrier handled and cared for said livestock in transportation, all of said livestock was greatly injured, shrunk, rendered weak and stale, diminished and depreciated in quantity, quality and value ......" The shipments were made between April 22, 1922, and December 2, 1922; the destination of 4 of them was Central Stock Yards, Jersey City, N. J., routed via Metuchen and Pennsylvania Railroad; of another the destination was Newark Stock Yards, Harrison, N. J., routed Phillipsburg Junction and Delaware, Lackawanna & Western Railroad; the destination of the other was Lancaster, Pennsylvania, via Philadelphia & Reading Railway Company. The shipments consisted of cows, steers, calves, sheep and hogs. Plaintiff paid the freight and other charges; his purpose was to sell on arrival at the stock yards. The shipments moved under uniform livestock contracts permitting a period of 36 hours to elapse without unloading for rest, water and feed: see Act of June 29, 1906, c. 3594, Sec. 1, 34 Stat. 607, Barnes' Fed. Code, Sec. 8295. In his statement of claim, plaintiff set his total damage at $2,190; in 1925 he got a verdict of $1,750; in 1929 judgment was entered on that verdict. Defendant appeals.

We accept the statement in appellant's brief that

there is evidence to support a finding of "the date when the stock should have been delivered;" as the time of each delivery was proved, there is no dispute about the periods of delay as an element in the verdict.

1. As 5 of the shipments were in interstate commerce, the contracts are subject to the federal law which states that "the measure of damages for loss of goods by a carrier when liable therefor is their value at the destination to which it undertook to carry them." [citing authorities] St. Johns Corp. v. Companhia Geral etc., 263 U. S. 119, 125; see also Chicago etc. Railway Co. v. McCaull-Dinsmore Co., 253 U. S. 97. So, also, the difference between the value at the place and time when and where it should have been delivered and the value when delivered is the general rule in a suit for damage to the shipment: New York etc. Railway Co. v. Estill, 147 U. S. 519; Barrett v. Van Pelt, 268 U. S. 85; compare N. Y. & N. R. R. Co. v. Peninsular Exchange, 240 U. S. 34. As to the intrastate shipment, the measure of damages is the same: Ruppel v. Allegheny Valley Railway, 167 Pa. 166, 181; Allen v. Adams Express Co., 77 Pa. Superior Ct. 174, 176.

We come then to the matter of damages in this case, and, in view of the manner in which it is raised, must state some of the facts in detail. Concerning the Lancaster shipment, there is evidence that cows were sold there, one for $30 and 4 for $85 each, which, if delivered within the time plaintiff contends they should have been, would then have had a market value of $100. In his statement of claim, plaintiff did not declare expressly in terms of the difference between the market value on the dates when shipments should have arrived and the amounts received for the cattle, but averred that his losses, in amounts stated, resulted from shrinking in weight and deterioration in food value and price consequent on the delay, etc. There was evidence that all the shipments should have

reached destination in the ordinary course of business within 36 hours at the outside; that, though there would be a normal loss in weight (the number of pounds was given) of the animals incident to the travel in the 36 hour period, it did not depreciate the food value of the animals. But there was evidence that the excessive delay, which, it was contended, had been shown, depreciated the food value of cattle by causing the veal to slaughter red instead of white, a difference reflected in the price, and also depreciated the cows so as to render them salable only for bologna purposes at much less than would otherwise have been received; the average amount of depreciation per pound for these causes was given. Plaintiff put in evidence the sales-memoranda delivered to him by the commission men who sold the cattle for his account, stating in detail the kind of animals and weights sold and prices received. These statements of account show much variation in prices received on the same day; the memorandum of April 27, for example, shows a variation in price of calves from 6 cents a pound to 10 cents; that of May 23, from 7 cents to 11 cents; that of October 11, from 3 cents to 14 cents; that of November 21, from 5½ cents to 11 cents; that of December 5, from 6½ cents to 13 cents. Plaintiff contends that the amount of his loss could be, and in fact was, found by the jury by considering the evidence giving the average shrinkage in weight resulting from the delay over 36 hours and applying the average loss per pound which the witnesses said the cattle so delayed, etc., would depreciate. In his charge the judge instructed the jury to consider that evidence with the returns from the commission merchants "as to whether it was not the reasonable market value of the stock in that condition . ...... " He also instructed the jury several times that the measure of damage was the difference between the market value of the livestock if it had arrived within a reasonable time in the condition in which it would

have been, and the market value at the time of its actual delivery in the condition in which it was then, and stated that it would be for the "jury to determine what was the market value in the open market that this stock would have sold for in each particular case and kind of stock at the place of destination, had it reached there within the time, within proper time, the reasonable time, and sold in its condition at that time, and the market price that it would have been sold, that it would have brought in its depreciated condition, if you find such depreciated condition from the causes referred to in this evidence."

There was evidence that there were three regular market days a week at the various destinations for the sale of such animals as were shipped,—Mondays, Wednesdays, and Fridays; that if a shipment, which, without negligent delay in transportation, should have arrived for any market day, did not arrive until the market closed, or until the next day, the cattle would nevertheless be sold because "it wouldn't pay to hold them longer," and that then they always brought less than if sold at the preceding market. There also was evidence that the market prices might vary—though the range of variation is not given—on different market days. Market price is evidence of value (Allen v. Express Co., 77 Pa. Superior Ct. 174, 177), but value may be found from evidence not stated in terms of market price; it may be found by the jury from evidence that the commodity has depreciated a given amount below what it will sell for in the market; in other words that the value is the selling price plus the depreciation stated in the evidence; in N. Y. & N. R. R. v. Peninsular Exchange, supra, the damage to the shipment of strawberries was obtained by applying a depreciation of 2 to 3 cents a quart to the shipment at destination where it was sold.

Now the only assignment of error raising this question of market value generally discussed in argument,

is based on an oral request to charge (made in response to the invitation of the court) and the answer of the court; as the request and answer occupy more than a page, we condense it. The request, if we understand it, was this: as there is no evidence of market price at destination on the day when a shipment should have arrived, but did not, and none, of such price on the day of arrival, there is no basis to find whether a loss (or how much) occurred, and, therefore plaintiff cannot recover, because the market price may have gone up enough to absorb the deterioration loss in suit. That request was refused, as we understand the answer, on the ground that the fluctuations were immaterial in the circumstances, as the jury had the evidence of physical deterioration represented in the cents per pound depreciation stated in the evidence, which remained the same regardless of the market price.

As has been stated, there was evidence of market price in the case of animals shipped to Lancaster, so, to that extent, appellant was not entitled to have its request affirmed. But without determining whether there is any ground for complaint in the abstract, we are satisfied there is no ground for reversal. Appellant's position seems to be that if delay, resulting in the mere accident of the loss of Monday's market, for example, without deteriorating the food value of the shipment, had brought them to sale at Wednesday's market and at a time when a higher market price than Monday's market prevailed—plaintiff having received the higher price of Wednesday, could of course recover nothing because he sustained no loss, (allowing for the expense of care &c. meanwhile).

The difficulty that appellant suggests does not arise on this record; plaintiff's evidence made out a prima facie case of loss susceptible of calculation in money by the jury; if, appellant wished to assert that plaintiff received more than the market price on any day when a particular shipment should have arrived, ap-

pellant should have offered evidence of such market prices to support its argument; without such evidence we need make no conjecture, for obviously the market may have fallen, in which event defendant would have profited on the theory on which plaintiff submitted the case; plaintiff's prima facie case of damage stands. This assignment of error is overruled.

2. The other question grows out of the refusal to affirm the following point for charge: "By the Interstate Commerce Act and its several supplements and amendments and by Federal Transportation Act of 1920, the Congress has imposed upon and entrusted in the Interstate Commerce Commission the power and duty of prescribing what reasonable facilities a common carrier engaged in interstate commerce shall provide for the handling of its interstate business and in the absence of a determination by the commission it is presumed that carriers engaged in interstate commerce have equipped themselves with adequate facilities, which presumption is binding upon this court and jury and is not subject to attack in this jurisdiction."

That instruction should have been given. The court had received evidence, against objection and exception, to show that some of the cars might have been delivered to connecting carriers at junctions nearer to point of origin than the Phillipsburg Junction where they were delivered, and that appellant's desire to have the long haul to Phillipsburg on its line, necessarily required more time in transportation. In the opinion refusing a new trial, the learned trial judge said that the refusal of this instruction was harmless error because the evidence justifying such instruction had been stricken out; this was doubtless an inadvertent statement, because the evidence stricken out related only to tariffs concerning some privileges incident to shipping to Lancaster via the Pennsylvania Railroad instead of via the Philadelphia & Reading; the evidence as to defendant's junction points *en route* to Harrison, N. J., re-

mained in the case. This evidence never should have been received because the shipping contract routed the shipments via Phillipsburg, so that it was not material whether there were other physically available junction points on defendant's line between point of origin and Phillipsburg. Moreover the general charge was erroneous in permitting the jury to pass on the adequacy of the facilities of defendant for the purpose of the shipment in question. That portion of the charge is too long to quote here. The record shows that the shipments were routed according to filed tariffs. Both court and jury were required to consider them reasonable until changed by new tariffs effective pursuant to the federal statute on the carrier's initiative or by order of the commission. Neither court nor jury had power to determine that defendant might have established a shorter through route from point of origin to destination by turning the shipment over to the connecting carrier at a junction nearer the point of origin: see Great Northern Railway v. Merchants Elevator Co., 259 U. S. 285, 291; Loomis v. L. V. R. R. Co., 240 U. S. 43, 48.

This assignment of error is sustained. Judgment is reversed and a new trial awarded.