JOSEPH A. LAFRANCE & others *vs.* STANISLAS DESAUTELS.

Bristol. October 23, 1916. — December 2, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Contract*, Performance and breach. *Agency*, Ratification. *Sale. Practice, Civil*, Waiver of defect in pleadings. *Pleading, Civil*, Waiver of defect. *Damages*, For breach of contract.

Where, at the trial of an action for a breach of a contract of sale to the plaintiff of 56,420 paving blocks which the plaintiff was to remove from the quarry of one who had sold them to the defendant, the defendant admits that the con-

tract was made and there is evidence tending to show that he permitted the owner of the quarry to remove the blocks and stated to the plaintiff, whom the owner of the quarry had prevented from removing the blocks, "Don't you see I can't stop them from carting, because there is an agreement," it cannot be ruled as a matter of law that the plaintiff cannot recover.

Where at the same trial there is evidence that the defendant knew that the owner of the quarry was taking the blocks away and was preventing the plaintiff from removing them, that he did not hinder or stop such conduct on the part of the owner of the quarry, that he asked the plaintiff for some of the blocks to sell to some one else and, although the plaintiff refused him permission, took 18,000 of the blocks from the quarry and sold them to a neighboring city, there is evidence from which the jury would be warranted in finding that the defendant approved and ratified the acts of the owner of the quarry, and it is proper for the judge to refuse to rule that there is no evidence upon which the jury could find that the owner of the quarry had authority from the defendant to refuse to deliver the blocks to the plaintiff.

Although under the provisions of a certain contract of sale it appeared that a demand by the purchaser for the goods was necessary, the purchaser was held to have been excused from making a demand because the seller told him that he could not deliver the goods to him and then sold and delivered a large portion of them to another person.

At the trial described above, the defendant requested the judge to rule that, notwithstanding his contract with the plaintiff, he "had the right to allow" the owner of the quarry "to take paving blocks to which he had title." The judge refused the request and instructed the jury in substance that the owner of the quarry had a right to sell all blocks which he had on hand at the quarry at the time of the sale by the defendant to the plaintiff above the number sold by the defendant to the plaintiff. *Held*, that by such instruction the ruling requested by the defendant was given in substance.

Where a declaration in an action of contract set forth an executory contract to sell goods which the plaintiff alleged the defendant refused to perform, and the action was tried as if it were an action for a refusal to deliver goods sold, no question of pleading being raised and the attention of the presiding judge not being called to the variance by the defendant when he asked for a ruling, which the judge refused, that on all the evidence the plaintiff could not recover, the defendant in this court cannot rely upon the variance as a ground for sustaining his exception to the refusal to give the ruling.

At the same trial the defendant requested the judge to rule that the plaintiff "had no right at any time to prevent" the defendant "from selling paving blocks to" a certain city "although it might cause the plaintiff to lose a valuable contract with the city." The judge refused the request, but, at the defendant's request, instructed the jury that, "as long as the defendant was willing, prepared and able to carry out his contract with the plaintiff, he had a right to sell all the paving blocks he wanted to, either to the city . . . or to other parties." *Held*, that in view of the instruction given, the defendant was not harmed by the refusal to rule as requested by the defendant.

At the trial of an action of contract for a refusal to deliver paving blocks sold to the plaintiff at Dartmouth in this Commonwealth, the judge on the question of damages instructed the jury that the market value of the blocks in Dartmouth could be determined by considering their market value in Fall River or

New Bedford, less the cost of removing them from the quarry to the cities where there was a market for this material. From all the evidence it might be inferred that paving blocks for city streets were not used to any great extent in Dartmouth. *Held,* that there was no error in the instruction.

CONTRACT, upon an oral contract entered into by the parties on July 8, 1914, which, as described in the bill of exceptions, "provided that the defendant agreed to sell to the plaintiffs, and they agreed to purchase of the defendant, 56,420 paving blocks at $42 per thousand, to be delivered at the quarry operated by A. Denault and Sons in the town of Dartmouth." Writ dated July 13, 1914.

At the opening of the trial in the Superior Court before *Callahan,* J., the defendant agreed that the contract was as above set forth but denied that he committed a breach thereof. The material evidence at the trial is described in the opinion. At the close of the evidence the defendant requested the following rulings besides those described in the opinion:

"1. There is no evidence upon which the jury can find that Alfred Denault had authority from the defendant to refuse to deliver, in behalf of the defendant, the paving blocks."

"7. Upon all of the evidence and the law, the plaintiffs are not entitled to recover."

"9. The defendant Desautels, notwithstanding his contract with the plaintiffs, had the right to allow A. Denault and Sons to take paving blocks to which he had title."

"12. The plaintiffs had no right at any time to prevent Desautels from selling paving blocks to the city of New Bedford, although it might cause the plaintiffs to lose a valuable contract with the city."

The rulings were refused. There was a verdict for the plaintiffs in the sum of $833.24; and the defendant alleged exceptions.

*A. Auger,* for the defendant.

*A. G. Weeks,* for the plaintiffs.

CARROLL, J. This action is for the refusal to deliver paving blocks sold to the plaintiffs.

There was evidence that the defendant informed the plaintiffs that he was the owner of "all the blocks Denault was cutting," saying, "Denault was practically turning the blocks over to him for his pay-roll." An agent of the defendant visited the quarry

every Saturday to ascertain the number of blocks cut during the week; a bill of sale was then made and the number of blocks was entered in a book by the defendant, the book showing that at the time of sale the defendant had at the Denault quarry 56,420 blocks. He wrote in the book: "July 8, Sold all my pavings to Lafrance Brothers at $42. per thousand," which memorandum Joseph Lafrance, one of the plaintiffs, signed.

On July 13, 1914, after the plaintiffs had removed 2,400 blocks, they were prevented by the Denaults from taking away what remained. Between July 8 and July 13 the Denaults carried off about 10,000 blocks. On July 10 the defendant said to the plaintiffs, "the Denaults claimed to have some blocks that were not covered by the sales which they had made," and asked the plaintiffs to allow Denault to take away a part of the blocks sold to them, so that Denault might fill an order from the city of New Bedford. This the plaintiffs refused. It was also in evidence that at this time the defendant told the plaintiff, Joseph Lafrance, that he was going to let the superintendent of streets of New Bedford have some blocks; and in reply to Lafrance's statement "I think I bought those blocks and I should keep them," the defendant said, "Why, only 10,000 blocks; that would not be a great amount for you." Lafrance also testified that he said to the defendant at this time, "I met young Denault this morning, and he told me that they were going to cart the blocks away;" the defendant knew the next morning that Denault was taking the blocks from the quarry. When the defendant's attention was called to the fact that Denault had taken away more blocks than he (Denault) claimed to own, the defendant said: "You see I can't sell you those blocks. . . . Don't you see I can't stop them from carting, because there is an agreement." From that time to July 20, the city of New Bedford received from the Denault quarry 18,000 paving blocks for which the defendant was paid.

As there was evidence of the sale and of the refusal to deliver the blocks, it could not be ruled, as matter of law, that the plaintiff could not recover.

From the defendant's knowledge that the plaintiffs were prevented from removing the material and his neglect to hinder it, his request for some of the blocks sold for his own use, and from

the number of blocks taken from the quarry and sold by him to the city of New Bedford, the jury could find that the defendant approved and ratified the acts of Denault. The first request was properly refused. *Cohen* v. *Jackson*, 210 Mass. 328.

The defendant in his second request asked the judge to rule, "If no proper demand for the delivery of the paving blocks, in accordance with the terms of the contract, was ever made by the plaintiffs to the defendant, they cannot recover." Assuming that under the terms of the contract a demand was essential, from the fact that the defendant practically admitted he did not own the blocks sold when he said, "I can't sell you those blocks," and by his actual sale of them to the city of New Bedford, the jury could find that the plaintiffs were excused from giving any notice. The judge was therefore right in refusing this request.

The ninth request was given in substance when the jury were told that the Denaults had a right to sell to the city of New Bedford all the paving blocks they had on hand at the quarry on July 8, 1914, above the number of 56,420 which had been sold by the defendant to the plaintiffs.

The defendant now argues that the action is not for the breach of a sale of designated blocks, but is founded on the breach of an executory contract to sell a number of blocks. The parties went to trial on the first count in the declaration, which sets out an executory contract. No question of pleading, however, was raised at the trial. The attention of the judge was not called to this point, and under the general request that upon the evidence and the law the plaintiff could not recover, this objection was not suggested. The trial proceeded on the ground that there was an actual sale, and not an executory contract to sell. Therefore, the question now argued by the defendant is not open to him. *Oulighan* v. *Butler*, 189 Mass. 287.

The judge said to the jury, at the request of the defendant, "As long as the defendant was willing, prepared and able to carry out his contract with the plaintiffs, he had a right to sell all the paving blocks he wanted to, either to the city of New Bedford or to other parties;" and added, "That is true . . . so long as he was prepared and willing to carry out his contract." In view of this, the defendant was not harmed by the refusal to give the twelfth request or by what was said in reference to the eleventh request.

When instructed on the question of damages, the jury were told that the market value of paving blocks in Dartmouth could be determined by considering their market value in Fall River or New Bedford, less the cost of removing them from the quarry to the cities where there was a market for this material. We see no error in this instruction. It might be inferred from all the evidence that paving blocks for city streets were not used to any great extent in the town of Dartmouth, and their value could be ascertained in the manner pointed out by the judge. *National Coal Tar Co.* v. *Malden & Melrose Gas Light Co.* 189 Mass. 234. *Barry* v. *Cavanaugh*, 127 Mass. 394. *Hanson & Parker, Ltd.* v. *Wittenberg*, 205 Mass. 319.

*Exceptions overruled.*