MANTON A. WOOD *vs.* CHARLES F. FAIRBANKS.

Berkshire.    September 19, 1922. — February 10, 1923.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Frauds, Statute of.   Contract,* What constitutes.   *Practice, Civil,* Judgment under
G. L. c. 231, § 122.

Where, upon the evidence at the trial of an action for breach of an oral agreement,
alleged to have been made "in consideration that the plaintiff would purchase
and pay for" a certain number of shares of the capital stock of a certain corpora-
tion, the agreement being that the defendant would "buy said stock at any time
of the plaintiff and pay him" a certain price therefor, it is plain that the defend-
ant never acquired title to the stock which always was owned by others and was
tránsferred by them directly to the plaintiff, that the plaintiff fully understood
that the defendant did not own the stock and that he was not undertaking to
sell stock, title to which was subsequently to be acquired by him before transfer
to the plaintiff, and that the defendant merely undertook to do what he could
to persuade the owner of the stock to sell it to the plaintiff, a finding that the
defendant agreed to sell the stock to the plaintiff is unwarranted, and, his agree-
ment to buy the stock of the plaintiff not being a part of a contract of sale and
not being evidenced by writing, the statute of frauds, G. L. c. 106, § 6, is a
defence.

In the action above described, this court, in sustaining exceptions saved by the
defendant to a request of the trial judge to rule that, "upon all the evidence the
plaintiff cannot recover," refused to order judgment for the defendant under
G. L. c. 231, § 122, because the plaintiff might desire to amend his declaration
by declaring on a contract of indemnity, and he should not be deprived of this
privilege.

CONTRACT for breach of an agreement by the defendant, alleged
to have been made "in consideration that the plaintiff would pur-
chase and pay for" two hundred and fifty shares of the common
stock of the Logan Johnson, Limited, "and become the owner
thereof," the alleged agreement being "to buy said stock at any
time of the plaintiff and pay him therefor the sum of $12,500, and
to take said stock off the hands of the plaintiff and reimburse
him therefor."   Writ dated May 3, 1921.

The defendant in his answer set up St. 1908, c. 237, § 4, and
R. L. c. 74, § 1 (see now G. L. c. 106, § 6; c. 259, § 1, cl. 2).

In the Superior Court, the action was tried before *Burns,* J.
Material evidence and portions of the charge to the jury are de-

scribed in the opinion. At the close of the evidence, the trial judge refused to grant a request by the defendant for a ruling that "upon all the evidence the plaintiff cannot recover." There was a verdict for the plaintiff in the sum of $13,235.44; and the defendant alleged exceptions.

*R. G. Dodge,* (*G. C. Scott* with him,) for the defendant.

*M. B. Warner,* for the plaintiff.

BRALEY, J. The defendant at the close of the evidence, and again at the conclusion of the instructions to which no exceptions were taken, duly excepted to the refusal of the judge to rule as requested "that upon all the evidence the plaintiff cannot recover."

The jury upon conflicting evidence would have been warranted in finding the following facts: The defendant was the president of the Logan Johnson, Limited, a corporation which manufactured jams, jellies, crushed fruits and syrups and also dealt in bakers' supplies. The plaintiff, who previously had been engaged in selling food products, had an interview with the defendant which resulted in his being engaged as general sales manager at an annual salary of $6,000, and he entered upon the discharge of his duties. After becoming manager, interviews followed between him and the defendant in which the defendant as president requested the plaintiff to become a vice-president of the company, and later the plaintiff with one Harris and one Calhoun, employees of the company, were elected vice-presidents. A subsequent interview at which the plaintiffs Harris and Calhoun were present took place at the defendant's request, when the defendant said "that he thought we should all own stock in the company," and stated "that he could get the Old Colony Trust, he believed, to help to finance any purchase of stock that we might make by us paying a small amount of money." Very shortly after this proposition had been made, the plaintiff with Calhoun and Harris again met the defendant, who then said that "he was very sorry but the Old Colony Trust had turned down the proposition, and that it would be impossible for him to get us stock that way, but he did know that Mr. Logan and Mr. Johnson — they were the old concern — had some stock that we could purchase at $50 par, which was $5 less than he would have sold us stock had he been able to put the proposition through the Old Colony Trust. The price then was to be $55." It appeared that the stock the plaintiff was to buy was the stock "of a new

corporation, a successor to Logan and Johnson Company," which at this time "was in great demand." The defendant assured the plaintiff "that the book value of the stock was approximately $74 a share . . . ; there couldn't anybody buy his stock for less than $55 and he wouldn't sell any at that." And also said "that he believed that he could arrange with Mr. Logan and Mr. Johnson for the purchase of their stock . . . and that he would see Mr. Logan and find out what he would do about it and let us know, which he did a few days after," and "told us that Mr. Logan and Mr. Johnson would both let us have the stock," and "that he appealed to them because he felt as though the vice-presidents should own the stock rather than Mr. Logan and Mr. Johnson, that he felt as though the officials of the company should at least be financially interested in the company." To the question, "Now after this interview, of which you are now testifying, was anything further said as to how this stock was to be bought from Logan and Johnson of the old company?" the plaintiff answered and the jury could find his answer to be true, "Yes. . . . [The defendant] then said, 'You understand this stock that we buy from Logan and Johnson will have to be a cash transaction.' I told him at that time I had no money. He said, 'You are not making a mistake by buying this stock, and if you can borrow the money, I should advise you to buy it. And I will go further,' he says, 'and if you purchase the stock, I will guarantee you that you will never lose a dollar. I will at any time take this stock off your hands at the price you paid for it.'" The plaintiff accordingly made arrangements for procuring the money, informed the defendant that it had been obtained, and took the check for $12,500 to the defendant's office, where in his presence it was given to one Penhollow, the defendant having told the plaintiff that "when I received the money to simply turn it over to Mr. Penhollow and he would make any arrangements necessary with Mr. Logan on the transfer of the stock." The check, which was made payable to the order of Clara M. Wood, the plaintiff's wife, shows these indorsements: "Pay to the order of Logan Johnson Limited, Clara M. Wood." "Pay to the order of Manton A. Wood, Logan Johnson Limited by Chas. S. Penhollow, Jr. Treasurer." "Manton A. Wood." "Hiram H. Logan." The plaintiff received by mail a "receipt of the stock" and "later the certificate." But one dividend was ever

received, and "the value of the stock some months after was practically nothing." The plaintiff thereupon tendered the certificates, and demanded his money back, and although the defendant first said, "Mr. Wood, bring your stock up at any time and we will take it off your hands," he later denied having made any agreement for reimbursement, and claimed that the plaintiff had bought the stock under the same conditions as the purchases by Harris and Calhoun to whom no such promise was given.

While the ruling asked dealt only with the evidence and not with the pleadings, the case was tried on the footing that the defendant sold the stock to the plaintiff with an agreement for repurchase. *Tangney* v. *Sullivan,* 163 Mass. 166, *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, *Lafrance* v. *Desautels,* 225 Mass. 324, *F. F. Woodward Co.* v. *Fitchburg,* 236 Mass. 365. The instructions to the jury were, that the first question "is for you to say whether or not the defendant sold the stock to the plaintiff's wife or the plaintiff's wife acquired the stock and not the plaintiff in this action, because if you so find, you should find for the defendant. The other question is, Did the defendant sell stock to the plaintiff? If you find that the defendant did not sell stock to the plaintiff, even though you should find that he made the promise which the plaintiff says he did, you should find for the defendant. And the next question is, Did the defendant make this promise? It is for you to say whether or not the defendant did make this promise, and it is for the plaintiff to prove by a fair preponderance of the evidence that the defendant did make this promise. . . . That is, the defendant himself must have sold this stock and made the promise, and that that was an inducement by which the plaintiff became a stockholder. In this case, unless those two elements are there together, that is, sale of stock by the defendant to the plaintiff and the promise, those two, the plaintiff could not recover in this action."

It is plain that the defendant never acquired title to the stock, which was always in the name of Logan and of Johnson, by whom the shares were directly transferred. The plaintiff fully understood that the defendant did not own the stock; nor was he undertaking to sell stock, title to which was subsequently to be acquired. The only undertaking on his part was that he would do what he could to persuade Logan and Johnson to sell to the

plaintiff. It follows that, there having been no contract of sale, the case at bar on the record is not governed by *Armstrong* v. *Orler*, 220 Mass. 112, but is within the statute of frauds. *Boardman* v. *Cutter*, 128 Mass. 388. The request should have been given and the exceptions must be sustained.

If this result is reached, the defendant asks that judgment in his favor be ordered. But we are not prepared to accede to this request. The plaintiff may desire to amend by adding a second count declaring on a contract of indemnity, and he should not be deprived of this privilege. See *Donovan* v. *Walsh*, 238 Mass. 356, 362.

*Exceptions sustained.*