KANSAS CITY & MEMPHIS RAILWAY COMPANY *v.* OAKLEY.

Opinion delivered November 2, 1914.

1. INTERSTATE COMMERCE—CONTRACT OF SHIPMENT—LIMITATION UPON LIABILITY.—The liability of a common carrier for loss or damage to freight in an interstate shipment may be limited or qualified by a special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from responsibility for loss due to negligence.

2.  CARRIERS—DAMAGE TO FREIGHT—MEASURE OF DAMAGES.—At common law, when goods or commodities are shipped in the ordinary course of commercial traffic to be resold at a profit, the general rule is that in case of the loss or injury to the goods for which the carrier becomes liable, the measure of damages is the value of the goods at the point of destination.

3.  CARRIERS—DAMAGE TO FREIGHT—LIMITED LIABILITY—CONSIDERATION.— The common-law liability of a carrier for loss or damage to freight delivered to it for transportation, can only be limited or restricted, when there is a consideration therefor.

4.  CARRIERS—DAMAGE TO FREIGHT — DAMAGES — EVIDENCE. — Plaintiff shipped apples over defendant carrier, consigned to himself at S. Through negligence of defendant the apples were not delivered to plaintiff for three days, by which time they had sustained damage. There being no market for apples at S., plaintiff reconsigned them to P., where they were sold at a loss. *Held*, in an action for damages against the carrier growing out of the delay, evidence of the market value of apples at P., the nearest market to S. was admissible.

5.  CARRIERS—DAMAGE TO FREIGHT—SUFFICIENCY OF EVIDENCE.—In an action for damages to freight, occasioned by delay in making delivery, the evidence *held* sufficient to warrant a verdict against the carrier.

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; affirmed.

### STATEMENT BY THE COURT.

This was an action by T. H. Oakley against the Kansas City & Memphis Railway Company to recover damages for alleged negligent delay in an interstate shipment of apples. The facts are as follows:

On the 18th day of September, 1913, the defendant Kansas City & Memphis Railway Company, issued a bill of lading to T. H. Oakley for a car load of apples at Rogers, Arkansas, consigned to himself at Skiatook, Oklahoma, and the shipper paid the freight therefor, which was $67. He was charged the regular tariff rate and the only rate that was in force from Rogers, Arkansas, to Skiatook, Oklahoma, over the route the shipment was made.

A clause in the bill of lading provided that the amount of any loss or damage for which the carrier was liable should be the invoice price, including the freight charges. The car contained 520 bushels of apples and the shipper paid therefor, at Rogers, Arkansas, the sum of 67½ cents per bushel, which was the market price at that place at that time. The apples were loaded into a car numbered 29443, but when the shipment arrived at Skiatook it was ascertained that the bill of lading described the car as No. 26045, and the carrier refused to deliver the apples to the consignee, but held them three days until it definitely ascertained that the car of apples was consigned to the plaintiff. According to the testimony of the plaintiff, the mistake in describing the number of the car was the fault of the carrier's agent at Rogers; on the other hand, according to the evidence adduced by the defendant, the mistake occurred through the fault of the shipper. The agent at Rogers testified that he described the car number in the bill of lading as given to him by the shipper who had loaded the apples into the car.

There was no market for the apples at Skiatook and the shipper, when the car load of apples was delivered to him, before unloading them, had them shipped to Pawhuska, a short distance away. During the three days the apples were held at Skiatook by the defendant the market price of apples at Pawhuska was $1.50 per bushel and it was only a few hours' run from Skiatook to Pawhuska. The shipper paid $351.60 for the apples and sold them for $159.

According to the testimony introduced by the plaintiff, neither he nor his agent was permitted to inspect the apples when they first arrived at Skiatook, but after they were delivered to him on the third day thereafter he discovered that a great many of the apples had become specked and were beginning to decay. When he unloaded the apples at Pawhuska about seventy-five bushels of them had become mushy and rotten and were wholly unfit for use. He says that a great many more

were rotten and were damaged to such an extent that he could not get full value for them. He does not state, however, the number of bushels that were thus damaged.

The jury returned a verdict for the plaintiff in the sum of $181.75. The defendant has appealed.

*Dick Rice,* for appellant.

1. There is no proof that any injury resulted from the mistake in the number of the car, nor that any damage resulted from "vents" not being kept open.

Section 3 of the bill of lading is not void. 14 I. C. C. Rep. 346; 21 *Id.* 8. It is not a limitation of the carrier's liability. 159 Fed. 960; 102 S. W. 11. The measure of damages was the invoice price at place of shipment. 163 S. W. 171; 165 *Id.* 279.

2. The Coolidge case (83 S. W. 333) is no longer the law. 102 S. W. 11; 163 *Id.* 171; 164 *Id.* 763. The interstate act controls the liability of carriers in interstate shipments. 101 N. E. 274; 102 *Id.* 423, and cases *supra.*

3. It was error, therefore, to admit evidence as to market value in its charge as to measure of damages. 1 Hutch. on Car., § 334; 148 S. W. 1035.

*Rice & Dickson,* for appellee.

1. Section 3 of the bill of lading was void. Only one rate and one route was offered, hence there was no consideration for the limitation. 73 Ark. 112-117; 74 *Id.* 358; 87 *Id.* 343. The cases, 165 S. W. 279, and 163 *Id.* 171, are not applicable.

2. Proof of the market value in the vicinity was admissible. 83 Ark. 7.

3. There was no errors in refusing instructions 4 and 5, requested. No 3 for appellant covers the same ground as No. 4, and No. 5 is not the law. 100 Ark. 269.

HART, J., (after stating the facts). Counsel for the defendant asked the court to instruct the jury that the plaintiff's damage should be computed upon the basis of the value of the property being the *bona fide* invoice price to the plaintiff, including freight charges, at the city of Rogers at the time of shipment, and assigns as error the

action of the court in refusing to give this instruction. His contention is based upon the clause in the bill of lading, which provided that the invoice price at the city of Rogers, including the freight charges, should be the measure of damages.

It has been repeatedly held by the Supreme Court of the United States in recent decisions that Congress has, by virtue of the Carmack amendment to the interstate commerce act, superseded all State statutes and regulations, and that the validity of any stipulation in a contract for an interstate shipment which undertakes to limit the carrier's liability is a Federal question to be determined by the State and Federal courts under the rule as declared by the Federal courts. That rule is that while a common carrier can not exempt itself from negligence, it may by fair and reasonable exemptions limit the amount recoverable by a shipper to an agreed value made for the purpose of obtaining a lower rate of two or more rates, proportionate to the amount of the risk. *Atchison, Topeka & Santa Fe Railway Co.* v. *Robinson,* 233 U. S. 173; *Boston & Maine Rd. Co.* v. *Hooker,* 233 U. S. 97; *Chicago, R. I. & P. Ry. Co.* v. *Cramer,* 232 U. S. 490; *Adams Express Co.* v. *Croninger,* 226 U. S. 491; *Kansas City So. Ry. Co.* v. *Carl,* 227 U. S. 639; *Missouri, Kansas & Texas Ry. Co..* v. *Harriman,* 227 U. S. 657.

(1) In the application of this Federal statute we are controlled by the construction given it by the Supreme Court of the United States, and the rule has been followed in *Kansas City So. Ry. Co.* v. *Mixon-McClintock Co.,* 107 Ark. 48, and *United States Express Co.* v. *Cohn,* 108 Ark. 115. Thus, it will be seen that the liability imposed by the Federal statute is the liability imposed by the common law upon a common carrier, and it may be limited or qualified by a special contract with the shipper, provided the limitation or qualification be just and reasonable and does not exempt from loss or responsibility due to negligence.

(2) At common law, where goods or commodities are shipped in the ordinary course of commercial traffic to

be resold at a profit, the general rule is that in case of the loss or injury to the goods for which the carrier becomes liable, the measure of damages is the value of the goods at the point of destination.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Coolidge,* 73 Ark. 112, we held that the general rule of damages for unreasonable delay in the transportation of goods is the difference between the market value of the goods at the time and place when and where they should have been delivered and their value when they were delivered, with interest.

In that case the court also held that a contract limiting or restricting the common law rule as to the liability of a carrier for negligence in the shipment of goods is valid only when based on a consideration, usually a reduction in the rate of the freight charged. To the same effect see: *Railway Company* v. *Cravens,* 57 Ark. 112; *St. Louis S. W. Ry. Co.* v. *Phoenix Cotton Oil Co.,* 88 Ark. 594; *Southern Express Co.* v. *Hill,* 81 Ark. 1.

(3) The record shows that there was only one tariff rate from Rogers, Arkansas, to Skiatook, Oklahoma, over the route the apples were shipped, and that the shipper paid that rate. Therefore, there was no reduction in the rate of freight charged as a consideration for restricting the liability of the carrier or for fixing the measure of damages other than that imposed by the common law. No other consideration appears in the bill of lading and under the decisions above cited, the common law liability of the carrier can only be limited or restricted where there is a consideration for it. Otherwise, the carrier, without any consideration therefor, could impel the shipper to fix the measure of damages at the value which it should designate in the bill of lading.

Counsel for the defendant cites the cases of *Kansas City So. Ry. Co.* v. *Mabry,* 112 Ark. 110, 165 S. W. 278 (Arkansas), and *Kansas City & Memphis Ry. Co.* v. *New York Central & Hudson River Rd. Co.,* 110 Ark. 612, but we do not think these cases have any application to the facts in the present case. It is true that in the Mabry case

the opinion states that the measure of damages as stipulated in the bill of lading was the price of the articles shipped at the place of shipment and does not state whether or not there was any consideration for such agreement. There, however, no contention was made that the measure of damages should be according to the price of the article at the place of delivery, and the court treated the contract as a valid contract between the parties because the parties themselves so treated it, and held that it was proper to consider the market price at Kansas City, Missouri, the place of destination, in order to determine the market price at Horatio, Arkansas, because there was no contention, from either side, that the Kansas City market was not the proper criterion in fixing the market price at Horatio, transportation charges being deducted.

So, too, in the case of *Kansas City & Memphis Ry. Co.* v. *New York Central & Hudson River Ry. Co., supra,* neither party made any contention that the stipulation in the bill of lading that the loss or damage for which any carrier under the contract is liable shall be computed on the basis of the value of the property being the *bona fide* invoice price to the consignee was not the proper measure of damages. The parties themselves having treated the contract as valid, the court did not attempt to pass upon the validity of the contract, but treated it as valid as the parties themselves had treated it. It follows that the court did not err in refusing to give the instruction under consideration.

(4) It is also contended by counsel for the defendant that the court erred in permitting a witness for the plaintiff to state the market value of the apples at Pawhuska, but we do not agree with them in this contention. It was shown by the plaintiff that there was no market for the apples at the time they arrived at Skiatook and that Pawhuska was the nearest market for the apples. *St. Louis S. W. Ry. Co.* v. *Kilberry,* 83 Ark. 87.

(5) Finally, it is contended by counsel for the defendant that there is not sufficient evidence to warrant

the verdict. The jury returned a verdict for the plaintiff in the sum of $181.75. The record shows that the apples were shipped in a refrigerator car, not iced, and that the bill of lading provided that the vents should be kept open. The purpose of keeping the vents of the car open was that the air might circulate through it while the car was in motion. When the car arrived at Skiatook and the plaintiff was permitted to inspect the apples three of the vents were open and one of them was closed. It is true the testimony of the defendant tends to show that the apples would have kept for a longer period of time than that during which the defendant delayed in delivering the apples to the plaintiff and that car loads of apples without ice usually keep longer than the period of delay in the present case. It must be remembered, however, that the testimony shows that the apples had begun to rot when they were delivered to the shipper and that when he unloaded them at Pawhuska seventy-five bushels of them were so rotten as to be entirely worthless and that a good many more were rotten to such an extent that their value on the market was greatly reduced.

The plaintiff also testified that he sold the apples to the best advantage possible as soon as he could unload them, and that they sold for $126 less than they cost him, and that he paid the freight thereon in the sum of $67 Besides, the testimony shows that during the three days that the defendant held the car of apples at Skiatook and refused to deliver them to the plaintiff the price of apples at that time at Pawhuska was $1.50 per bushel and that it was only a few hours' run from Skiatook to Pawhuska. That after the apples were delivered to the shipper their price declined and that he sold what was left for the best price obtainable in their damaged condition. The plaintiff paid only 67½ cents per bushel for the apples and his testimony in respect to the market price at Pawhuska and the price which he paid for the apples is undisputed. Therefore, the jury might well have placed his damage at a greater sum than $181.75.

We find no error in the record and the judgment will be affirmed.