WOONSOCKET MACHINE AND PRESS COMPANY *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk. March 22, 1921. — June 6, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Carrier*, Of goods. *Damages*. *Evidence*, Remoteness, Relevancy and materiality.

In an action by a shipper against a carrier for failure to deliver projectiles in New York in accordance with the terms of a bill of lading given by the carrier to the shipper, there was evidence that the projectiles had been manufactured by the plaintiff under a contract, including plans and specifications, with a company which had agreed to deliver the projectiles to the British government for $8 each free alongside ship in New York and that under its contract with that company the plaintiff was to receive $4.10 for each projectile. *Held*, that

(1) The shipper was entitled to recover full compensation for the loss or damages suffered by the carrier's failure to carry and deliver the projectiles safely;

(2) The plaintiff's loss was to be determined by the value of the projectiles at the time and place of delivery and not at the time and place of shipment;

(3) The plaintiff's loss was the actual value of the shells, which should be determined by the cost of replacing them;

(4) The sum which the British government was to pay the plaintiff's prime contractor was not decisive of the actual value of the projectiles at the time and place of delivery: their value may have been more or less than that contract price;

(5) If, at the time of the breach of its contract by the defendant, shells of similar material could be manufactured at a certain price, that price, together with such expenses as might be reasonably incurred in procuring a new contract, would fairly and correctly measure the extent of the plaintiff's loss.

A ruling made by the judge at the trial of the above described action, that the price the British government paid other manufacturers for similar projectiles under contracts made five months or more later than the date of the contract between the British government and the plaintiff's prime contractor, was not competent evidence to affect or control the plaintiff's measure of damages, was erroneous, it not appearing that the dates of those contracts or the deliveries thereunder were so remote in time as to afford no ground for comparison.

Refusals, by the judge at the trial of the action above described, to rule that the plaintiff could not recover the profit it would have made if the goods had not been lost, and that the price to be paid the plaintiff's prime contractor by the British government was not the true measure of the value of the shells at destination as it included the profit arising to the plaintiff and that company, were erroneous.

In the same action it was *held* that the profits of the contract were not material for
the purpose of showing the actual value of the projectiles and were not to be con-
sidered in estimating the plaintiff's damages against the carrier.

The contract price to be paid to the plaintiff's prime contractor by the British
government for the projectiles was admissible in evidence in the action against
the carrier above described as bearing on the question of the value of the goods
lost, and as tending to show the cost of replacement, but such evidence was not
conclusive.

CONTRACT for damages resulting from the loss while in transit
of two carloads of projectiles, which had been manufactured by
the plaintiff for the Traylor Engineering and Manufacturing Com-
pany, a prime contractor with the British government, according
to the provisions of a contract in writing including specifications
and drawings and had been delivered to the defendant in Woon-
socket in the State of Rhode Island for transportation to New
York in the State of New York. Writ dated March 10, 1917.

In the Superior Court the action was heard by *Hammond*, J.,
without a jury. Material evidence and exceptions taken by the
defendant to the admission and exclusion of evidence and rulings
made by the judge are described in the opinion. The judge found
for the plaintiff in the sum of $54,336.75 with interest from the
date of the writ; and the defendant alleged exceptions.

*G. S. Brengle*, of New York, (*F. W. Eaton* with him,) for the
defendant.

*A. Marshall*, for the plaintiff.

CARROLL, J. In February, 1916, the plaintiff delivered to the
defendant three carloads of empty projectiles known as eighteen-
pounder high explosive shells, to be carried from Woonsocket,
Rhode Island, to New York and delivered alongside a ship to be
designated by the consignee, the forwarding agents for the British
government. On February 19, while two carloads of projectiles
were in transit on a lighter belonging to one of the defendant's con-
necting carriers, a storm arose and the cargo was thrown into the
harbor. The defendant admits liability for the loss. The ques-
tion in the case is the amount which the plaintiff is entitled
to recover.

The projectiles were manufactured by the plaintiff under a con-
tract dated July 3, 1915, with the Traylor Engineering and Manu-
facturing Company which had agreed to supply the said projectiles
to the British government at the price of $8 each, free alongside

ship, New York. The plaintiff, by its contract with the Traylor company, was to receive $4.10 for each projectile. The average cost to the plaintiff of producing was $4.35.

The defendant offered evidence (which was admitted *de bene* and afterwards excluded, subject to the defendant's exception), of contracts for the manufacture of high explosive shells, as follows:

A contract of July 10, 1915, between the British government and the Washington Steel and Ordnance Company for the manufacture by this company of eighteen-pounder high explosive shells; twelve thousand five hundred shells were to be delivered each week, up to and including December 31, 1915, at $5.50 per shell. The shells to be delivered between January 1 and April 30, 1916, were to be at the same price, with such modifications in the price as might be necessary to cover advances in the cost of material or labor. These shells were substantially similar to those made by the plaintiff and deliveries to the extent of one hundred and seventy-two thousand two hundred and seventy shells were made.

A contract of November 1, 1915, supplementary to the last mentioned one between the same parties, for the manufacture of three hundred and twenty-five thousand shells, beginning January 1, 1916, the entire number to be delivered not later than June 30, 1916, at the rate of $5.25 for each shell. Deliveries under this contract to the number and at the price called for were made and the shells were similar in all material respects to those made by the plaintiff.

A contract dated October 5, 1915, of the British government with the E. W. Bliss Company to manufacture and deliver f.a.s. New York harbor, nine hundred and fifty-two thousand five hundred shells similar to those manufactured by the plaintiff at $5 a shell. Deliveries were made according to the contract.

The case was heard by a judge sitting without a jury. He ruled at the request of the plaintiff that it was entitled to recover on the basis of $8 a shell, less deductions for salvage for the recovered shells, and that the evidence of what the British government may have paid for similar shells under contracts five or more months later with other parties, was not competent to prove the amount of the plaintiff's loss. He further ruled that the plaintiff could recover the value at the place of delivery, which value was the price which the British government had agreed to

pay the Traylor company, that is, $8 per shell, and found for the plaintiff for $54,336.75 with interest.

The shipper was entitled to recover full compensation for the loss or damages suffered by the carrier's failure to carry and deliver the shells safely. *Blanchard* v. *Page*, 8 Gray, 281. *Finn* v. *Western Railroad*, 112 Mass. 524. It was correctly ruled that the plaintiff's loss was to be determined by the value of the goods at the time and place of delivery and not at the time and place of shipment. *Chicago, Milwaukee & St. Paul Railway* v. *McCaull-Dinsmore Co.* 253 U. S. 97. See *Crutchfield & Woolfolk* v. *Director General of Railroads, ante,* 84; *Spring* v. *Haskell*, 4 Allen, 112; *Cutting* v. *Grand Trunk Railway*, 13 Allen, 381, 385. See also *Lafrance* v. *Desautels*, 225 Mass. 324, 329.

Under ordinary conditions, full compensation for the carrier's breach of duty would be measured by the fair market value of the property lost or destroyed. If at the time of the defendant's breach of the contract the shipper could purchase in the open market substantially similar shells to the ones described, the payment of the market value of the same would, under well settled principles, place it in the same position it would be in if the contract were not broken, and would fully compensate it for its loss. *Harvey* v. *Connecticut & Passumpsic Rivers Railroad*, 124 Mass. 421, and cases cited *supra*. But market value is not the only test. In the case at bar, the property described had, properly speaking, no market value; and the measure of the plaintiff's indemnity must be settled by other standards. Its loss was the actual value of the shells, which should be determined by the cost of replacing them. The sum which the British government was to pay the Traylor company was not decisive of their actual value at the time and place in question. Their value may have been more or less than the contract price. If at the time, shells of similar material could be manufactured at a certain price, that price, together with such expenses as might be reasonably incurred in procuring a new contract, would fairly and correctly measure the extent of the plaintiff's loss. This rule for the assessment of damages where property injured is not marketable, has been frequently followed. For examples, see *Wall* v. *Platt*, 169 Mass. 398, 405, 406, 407, where the cost of the replacement of buildings and furniture destroyed by fire was considered; *Mather* v. *American Express Co.*

138 Mass. 55, where architect's plans were lost and the measure of the plaintiff's damages was held to be the cost of new plans with reasonable expenses for procuring them; *Murray* v. *Postal Telegraph-Cable Co.* 210 Mass. 188, 196, where damages were sought for the loss of gowns made to order for customers, and the cost of labor and material was considered competent as bearing on the plaintiff's damages. *Green* v. *Boston & Lowell Railroad,* 128 Mass. 221. *Weston* v. *Boston & Maine Railroad,* 190 Mass. 298. See also *C. W. Hunt Co.* v. *Boston Elevated Railway,* 199 Mass. 220.

There was error of law in ruling that the price the British government may have paid other manufacturers for similar shells (under contracts made five months or more after the date of the contract with the Traylor company), was not competent to affect or control the plaintiff's measure of damages; and that the value of the shells was the price to be paid the Traylor company on delivery. And there was also error in refusing to rule, as requested by the defendant, that the plaintiff could not recover the profit it would have made if the goods had not been lost; and that the price to be paid the Traylor company was not the true measure of the value of the shells at destination, as it included the profit arising to the plaintiff and the Traylor company; and in excluding the evidence of the contracts of the British government with other manufacturers.

The profits of the contract were not material for the purpose of showing the actual value of the shells and were not to be considered in estimating the plaintiff's damages against the carrier. The contract price, however, did have a bearing, though it was not conclusive, on the question of the actual value of the shells and as tending to show the cost of replacement. The contracts with the Washington Steel and Ordnance Company and the E. W. Bliss Company were also admissible for this purpose, although made in July, October and November of 1915.

In estimating the value of property taken for a public purpose, actual sales of similar land in the vicinity at or near the time are admissible, although much must be left to the discretion of the presiding judge in deciding what lands are similar and whether the transaction is sufficiently near in point of time to afford a fair comparison; but even in these respects the decision of the court is reviewable if manifest error is shown. See *Fourth National Bank*

*of Boston* v. *Commonwealth,* 212 Mass. 66. So also, in arriving at the actual value of goods destroyed, which have no market value in the proper sense, other contracts not remote in point of time, for the manufacture of similar goods, are admissible. It was agreed that the contracts excluded were for the manufacture of shells of a similar character to those called for by the plaintiff's contract, and while the plaintiff's contract was dated July 3, 1915, and the time of delivery was from August 1 to December 31, 1915, and the contracts excluded were executed in July, October and November, 1915, deliveries were made in accordance with their terms, those made under the November contract being made from January to June, 1916. The shells being substantially similar to those manufactured by the plaintiff, and it not appearing that the dates of those contracts or the deliveries thereunder were so remote in time as to afford no ground for comparison, the evidence was relevant and had an important bearing on the question of the actual value or the cost of replacement of the property destroyed and should have been admitted. See in this connection *Paine* v. *Boston,* 4 Allen, 168; *Chandler* v. *Jamaica Pond Aqueduct Corp.* 122 Mass. 305; *Lyman* v. *Boston,* 164 Mass. 99, 104, 105.

*Exceptions sustained.*