## NORFOLK & W. RY. CO. v. FT. DEARBORN COAL & EXPORT CO.

(Circuit Court of Appeals, Fourth Circuit.   May 3, 1922.)

No. 1944.

1. **Carriers ⟨⟩94(4)—Value and not cost is measure of damages for coal confiscated by carrier without malice.**

In an action against a carrier for the confiscation of coal shipped by plaintiff over its line, where the evidence showed the confiscation was to meet the carrier's needs and was not malicious, the measure of damages was the market value of the coal at the time and place of confiscation, and not the cost of the coal to the shipper.

2. **Carriers ⟨⟩94(3)—Evidence offered by defendant held to show damage was market value of credit in coal pool.**

In an action against a carrier for confiscation of coal delivered to it for transportation, evidence offered by defendant that the coal, which plaintiff intended for export, was to be delivered to a coal pool at the point of destination, from which the shipper had no authority to divert it, and that on delivery there it would be merged in the pool, and the shipper given only a credit for an equal amount of coal in the pool, shows that the damage to the shipper by the confiscation of the coal was the market value of the credit for that amount of coal in the pool.

3. **Trial ⟨⟩49—Rejection of defendant's offer of evidence of market value held not sustainable, as relating only to contract coal.**

In an action for the confiscation of coal by a carrier, the rulings of the trial court in excluding evidence as to the market value of the coal cannot be sustained, on the theory that the offered evidence referred to the value of contract coal, and not to spot coal, which included the coal in controversy, and which had a value widely differing from contract coal, where the rejection of the offers was not based on the ground they related to contract coal, but on the ground the measure of damages was the price paid for the coal, and some of the offers were broad enough to embrace spot as well as contract coal.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action at law by the Ft. Dearborn Coal & Export Company against the Norfolk & Western Railway Company. Judgment for plaintiff on directed verdict, and defendant brings error. Reversed.

John H. Holt, of Huntington, W. Va. (Theodore W. Reath and F. Markoe Rivinus, both of Philadelphia, Pa., and Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for plaintiff in error.

George S. Couch and Malcolm Jackson, both of Charleston, W. Va. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for defendant in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

KNAPP, Circuit Judge. During the months of July and August, 1920, the Ft. Dearborn Coal & Export Company, plaintiff below and herein so called, purchased from the Old Dominion Coal Corporation, on board cars at the mines of the Mud Lick Coal Company, at Stone, Ky., a quantity of run of mine coal, intended for export. A stipula-

tion of the parties, entered into before plaintiff's declaration was filed, is to the effect that the coal so purchased consisted of 897 tons of run of mine coal, which was shipped by the Old Dominion Corporation over the lines of the Williamson & Pond Creek and Norfolk & Western Railways, consigned to the Ft. Dearborn Company at Lamberts Point, Va., for export, but was confiscated en route by the Norfolk & Western, at Bluefield, W. Va., and used by it for fuel purposes, without the knowledge or consent of the Ft. Dearborn Company. Pursuant to this stipulation plaintiff filed its declaration in trespass on the case, alleging damages to the amount of $50,000, and issue was joined by defendant's plea of "not guilty."

At the trial, after reading the stipulation in evidence, plaintiff's president was allowed to testify, over repeated objection, that the aggregate price paid for the coal was $15,234.19, or a little under $17 per ton on board cars at the mines. and that the Old Dominion Company had brought suit therefor in the circuit court of Kanawha county, W. Va., and recovered a judgment against plaintiff for the principal sum of $15,234.19, with $1,084.05 interest, or a total of $16,318.24, which judgment it had paid. There was no attempt to show the market value of coal at the point of shipment, at the place of confiscation, or at destination; the only proof of damages offered by plaintiff being the price it paid for the coal. On cross-examination the witness testified that this coal was intended for export; that it was shipped under permits, and would have gone into pools 5 and 7 at Lamberts Point; that for coal so moving under permit, after it passed the Bluefield scales, defendant would arrange a credit to the consignee in the pool to which it was going; that the consignee would receive such credit before the coal arrived at destination; and that it then lost its identity. He was thereupon asked the following question:

"Then really what you lost, as I understand you, by the confiscation of this coal, was the credit for that amount of tons in the particular pool to which it was going?"

Plaintiff's objection to this question was sustained, as were also its objections to a number of similar questions put to defendant's witnesses showing or tending to show, as the avowals declare, that all coal shipped to tidewater over defendant's lines during the months of July and August, 1920, was shipped to certain pools, under the articles of organization and rules of the Lamberts Point Coal Exchange, of which plaintiff was a member; that the coal in suit, if it had not been confiscated, would have gone into pool 5 or 7, and that plaintiff had no power to divert it to any other place or purpose; that this coal, if it had not been confiscated, would have passed to the credit of plaintiff in the pool to which it was consigned, upon estimated weights made at Bluefield, which credit would have been available under ordinary circumstances, for loading into vessels, at least three days before arrival of the coal at the pool; and that all coal to tide, during the months named had to be shipped on permits of an agent of the Interstate Commerce Commission, as appeared from certified copies of the Commission's orders tendered with the avowal in that regard.

The trial court likewise excluded all testimony offered by defendant as to the circumstances under which the coal in question was taken, to meet the charge in the amended declaration that it was "willfully, maliciously, and forcibly" appropriated; all testimony as to large quantities of other coal confiscated during the same months, and for which the owners voluntarily presented bills and accepted payment at prices very much below the price paid by plaintiff for the coal in suit; and all testimony as to the lower market prices prevailing at the time, for both contract and "spot" coal, at Bluefield and in neighboring districts. In short, the rulings under review were apparently based upon, and are consistent only with, the theory that the measure of damages in this case was the price which plaintiff paid for the coal. Accordingly, at the conclusion of the testimony, a verdict was directed in its favor for $16,318.24, the amount of the judgment it had paid, and defendant comes here on assignments of error.

[1] We are unable to sustain the plaintiff's contention. Its coal was wrongfully taken, to be sure, because taken without consent or any warrant of law. But plaintiff made no effort to prove the malice, which it had amended its declaration to set up, while defendant offered to show, and presumably could have shown, that the taking was necessary to the discharge of its public duties. The case of record, therefore, is the ordinary case of conversion, and no reason is perceived for not applying the ordinary measure of damages in such case, namely, the market value of the property at the time and place of confiscation. Plaintiff is, of course, entitled to be made whole, not as against an improvident purchase or a falling market, but for the actual loss it suffered by defendant's appropriation of its coal.

[2] On the offers and avowals of defendant it must be assumed, as plaintiff's president testified, that the coal sued for, if it had not been taken, would have gone into certain pools at Lamberts Point; that plaintiff had no right of diversion "to any other place or purpose"; that, after passing the scales at Bluefield, this coal in transit would have had practically the same status as though delivered at the pools; that its identity would then have been lost, and plaintiff entitled merely to a credit in the designated pools for the same number of tons of coal of corresponding grade. This being so, it seems plain that plaintiff's actual loss was the market value of the credit which it would have received, if its coal had not been confiscated, and that market value, presumably capable of ascertainment, measures the damages which plaintiff may rightfully recover. Chicago, M. & St. P. Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 Sup. Ct. 504, 64 L. Ed. 801.

[3] It is argued that at the time in question there was a wide difference of value between contract coal and "spot" coal; that plaintiff's coal, moving to tidewater for export, was spot coal; that defendant's offers all related to contract coal, and not to spot coal; and that therefore the only proof of the value of plaintiff's coal was the proof of what plaintiff paid for it. The argument is far from convincing. Even if it be granted that evidence of the cost of confiscated property is any evidence of its value in a suit for conversion—and no case is cited which supports the proposition—it would be sufficient to point

out that defendant's offers do not appear to have been rejected on the ground that they were confined to contract coal, but rather on the ground, as we warrantably infer, that the measure of damages was the price paid for the coal.  Moreover, some of the offers were broad enough in terms to embrace export as well as contract coal, as, for example, the table furnished the Senate Committee by the Interstate Commerce Commission, showing the prices of both contract and spot coal, in July and August, 1920, in the Eastern division of the United States, which includes the territory here involved; and to this it may be added that the ruling on the question above quoted, and like questions afterwards propounded, was in effect a ruling that proof of the value of coal for export, going into a pool at Lamberts Point, would also be held inadmissible.

Further discussion is not needed.  It is enough to say that in our judgment the case was tried on an erroneous theory of liability, and therefore defendant is entitled to another day in court.  On the record here presented the proper measure of damages is, as above stated, the value of the credit which plaintiff would have received, if its coal had not been confiscated; but this will not be controlling on a new trial, if the facts then disclosed are materially different from the avowals of defendant in connection with its rejected proofs.

Reversed.