BROWN COAL COMPANY, Appellee, v. ILLINOIS CENTRAL RAILROAD
COMPANY, Appellant.

**DAMAGES:** Measure of Damages—Loss of Interstate Shipment. The
"full actual loss," under the Cummins Amendment (38 Stat. at
Large 1196) to the Interstate Commerce Act, and consequently the
"measure of damages" to a wholesale and retail dealer in coal for
the loss, during an interstate shipment, of a portion of a car of coal
which was intended for storage, and sale as occasion might arise, is
the fair market value of the undelivered coal at the initial point of
shipment, plus freight thereon, if any paid, and plus the war tax.

*Appeal from Woodbury District Court.*—MILES W. NEWBY,
Judge.

APRIL 3, 1923.

REHEARING DENIED OCTOBER 16, 1923.

ACTION to recover damages for loss of a portion of a carload
of coal, while in transit over the line of defendant's railroad
from a point in Illinois to Sioux City. The plaintiff recovered
a verdict of $25.66, and the trial court allowed an appeal to this
court.—*Reversed.*

*Helsell & Helsell* and *Henderson, Fribourg & Hatfield,* for
appellant.

*W. M. Morheiser,* for appellee.

FAVILLE, J.—Appellee is a coal dealer in Sioux City. Ap-
pellant is a common carrier. On or about February 19, 1921,
the appellant received for transportation to the appellee at
Sioux City a certain car, containing 109,700 pounds of 6-inch
lump coal. When the car arrived at its destination, there was
a shortage of 5,200 pounds. The appellee offered testimony to
the effect that the retail price of coal in Sioux City, in small
lots, at the time of the loss, was $15 per ton, and that the items
making up said retail price were as follows:

| Mine cost | $4.05 |
|-----------|-------|
| Freight | 4.98 |
| Unloading | .35 |
| Cartage | 1.75 |
| War Tax | .15 |
| Overhead | 1.60 |
| Profit | 2.12 |

The trial court, by instructions, required the jury to deduct from the retail value of $15 per ton at Sioux City, the two items consisting of freight, $4.98, and war tax of 15 cents per ton. The other items were allowed by the jury in making up the amount of the verdict.

The shipment was in interstate commerce. The loss was of a portion of a carload lot, being 5,200 pounds out of the total shipment of 109,700 pounds. The purchaser was a coal dealer in Sioux City, selling coal at wholesale and retail, and handling from 150,000 to 200,000 tons of coal per year. At the time of the shipment, the appellee had on hand in its yards a quantity of coal of the kind contained in this shipment, sufficient to meet the ordinary and usual demands of its business. The coal in question had not been purchased to supply any particular customer, nor had the same been sold by the dealer under any contract which required the receipt of this shipment, in order to be filled.

The evidence shows that the appellee conducts a retail coal business at Sioux City, and also sells coal in carload lots in the territory adjacent to Sioux City and to the surrounding towns, such as Le Mars, Alton, Yankton, Carroll, Moville, Correctionville, and Sergeant Bluff, and that the price charged for this particular grade of coal to dealers in surrounding towns, at the time in question, was $4.35 per ton, the dealers paying the freight, war tax, unloading charge, and hauling charge, themselves.

Upon this state of facts, what was the true measure of damages for the loss suffered by the appellee? The general rule is established at common law that, where goods are lost by a carrier while in transit, the measure of damages is the market value of the goods shipped, at the place of destination at the time when delivery should have been made, less the freight

charges to the point of destination, unless they have been previously paid. Hutchinson on Carriers (3d Ed.) Section 1360; *Southern P. Co. v. D'Arcais,* (Tex. Civ. App.) 64 S. W. 813; *Chesapeake & O. R. Co. v. Stock & Sons,* 104 Va. 97 (51 S. E. 161); *Norfolk & W. R. Co. v. Ft. Dearborn C. & E. Co.,* 280 Fed. 264; *Central Georgia R. Co. v. American Coal Co.,* 28 Ga. App. 95 (110 S. E. 320); *Byram v. Payne,* 58 Utah 536 (201 Pac. 401); *Crutchfield v. Hines,* 239 Mass. 84 (131 N. E. 340); *Woonsocket M. & P. Co. v. New York, N. H. & H. R. Co.,* 239 Mass. 211 (131 N. E. 461); *Morrell v. Northern P. R. Co.,* 46 N. D. 535 (179 N. W. 922); *Conover v. Wabash R. Co.,* 208 Ill. App. 105; *New York, L. E. & W. R. Co. v. Estill,* 147 U. S. 591; *Northern Trans. Co. v. McClary,* 66 Ill. 233; *Kansas City & M. R. Co. v. Oakley,* 115 Ark. 20 (170 S. W. 565); *Allen v. Adams Exp. Co.,* 77 Pa. Super. Ct. 174; *Eastern Coal & Exp. Corp. v. Norfolk & W. R. Co.,* (Va.) 113 S. E. 857; 10 Corpus Juris 395, and many cases cited.

This general rule has been applied under a great variety of circumstances, in almost innumerable cases. It became quite a general practice among carriers to abridge or limit their common-law liability for destruction to or loss of property in transit, by terms and provisions inserted in the contract of shipment. This practice led to the adoption of legislation, both state and Federal, limiting or abrogating the provisions of the common-law rule. It is unnecessary that we attempt to review these various enactments.

Among these enactments was the act of March 4, 1915, Chapter 176, 38 Statutes at Large 1196, the Cummins Amendment to the Interstate Commerce Act. This amendment provides that the carrier affected by the act "shall issue a receipt or a bill of lading * * * and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier * * * from the liability hereby imposed;" and further, that the carrier "shall be liable * * * for the full actual loss, damage, or injury * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in

any contract, rule, regulation, or in any tariff filed with the interstate commerce commission; and any such limitation without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void.''

The shipment in controversy in this action was an interstate shipment, and hence it comes under the terms and provisions of the Interstate Commerce Act and the Cummins Amendment. *Adams Exp. Co. v. Croninger*, 226 U. S. 491. It is to be observed that, by the terms of said amendment, the carrier becomes liable for ''the full actual loss'' suffered. The question before us is, What is the proper construction to be placed upon these words, in the light of the facts in the instant case?

Both parties to this action place reliance upon the case of *McCaull-Dinsmore Co. v. Chicago, M. & St. P. R. Co.*, 252 Fed. 664. This action was brought in the district court of the United States for the district of Minnesota. In said action it appeared that the plaintiff shipped a carload of wheat from a point in Montana to Omaha, Nebraska. The car and entire contents were wrecked and lost in transit. The bill of lading provided that, in the event of loss in transit, the value of the property at the time and place of shipment, including freight charges, if paid, should be the measure of recovery. Notwithstanding this provision in the bill of lading, the plaintiff sought to recover the value of the carload of grain at the place of destination. The question was whether the plaintiff was entitled to recover the value of the carload of grain at the place of origin, as provided in the bill of lading, or its value at the place of destination. It appeared that the difference in the market value of the entire carload of grain at the place of origin and at the place of destination was about $200.

The district court (Morris, judge) held that the recovery was controlled by the terms and provisions of the Cummins Amendment, regardless of the stipulations in the bill of lading, and that the liability of the carrier, under the Cummins Amendment, was the same as at common law, viz: ''The value of the goods at the point of destination at the time they should have been delivered.'' The court said: ''This is the actual loss to the shipper.'' The case was appealed to the Circuit Court of

Appeals of this circuit, and the opinion of said court is reported in 260 Fed. 835. The court said:

"There was no uncertainty as to the time or place of estimating value under the rule of common law,—it was the destination."

The decision of the district court was affirmed. Thereupon, the case was taken to the Supreme Court of the United States, and is reported in 253 U. S. 97. That court said:

"We understand that it [the bill of lading] does not necessarily prevent a recovery of the full actual loss, and that, if the price of wheat had gone down, the carrier might have had to pay more under this contract than by the common-law rule. But the question is how the contract operates upon this case. In this case, it does prevent a recovery of the full actual loss, if it is enforced. The rule of the common law is not an arbitrary fiat, but an embodiment of the plain fact that the actual loss caused by breach of a contract is the loss of what the contractee would have had if the contract had been performed, less the proper deductions which have been made and are not in question here."

The judgment was affirmed.

It may be conceded that this case is authority for the proposition that, under the Cummins Amendment, the amount of recovery cannot be limited by the contract of shipment, and that the shipper is entitled to recover what he would have been entitled to recover at common law. Under the general rule above set forth, this would ordinarily be the fair market value at the destination at the time delivery should have been made, less freight charges, if not already paid.

But this still leaves us to determine what is meant by "market value," as applied to the facts of this particular case. Here was a shipment of a carload of coal to a party who was a dealer in coal at wholesale and retail. The car arrived at its destination, but was short 5,200 pounds out of a total of 109,700 pounds. In the *McCaull-Dinsmore* case, the entire shipment was lost. What would be the rule to determine the "market value" if a portion of the carload of grain had been destroyed was not involved in the decision in that case.

Is appellee's recovery to be measured by the value of the

number of pounds of coal lost from the carload, at the retail price per ton at the point of destination, including therein original cost, freight, war tax, cartage, overhead, unloading, and profits? Or is it to be measured by the market value of a carload of coal at the point of destination, containing 104,500 pounds instead of 109,700 pounds? What is the unit of measurement? Is it the carload that is 2.6 tons short, or is it the retail selling price per ton of the said 2.6 tons?

Under the Cummins Amendment, the appellee is entitled to his "full actual loss,"—no more, no less. What was his "full actual loss" in this particular instance? This does not come within the class of cases where there has been a resale of the specific article, to the carrier's knowledge, and the particular shipment is required to carry out such contract or sale. There is no such claim here. Nor does it fall within the class of cases where the purchaser had bought for a particular use or need, and the entire shipment was required for that purpose. The undisputed evidence shows that appellee was a large dealer in coal, at both wholesale and retail; that he had on hand at the time, in storage, a sufficient quantity to meet all the demands of his business; that the coal was not needed to fill any outstanding orders; and that appellee intended to store the coal and sell it as occasion might demand. It also appears that appellee handled and sold this particular kind of coal, both in carload lots as a wholesaler, and by the ton as a retailer.

There is no contention but that appellee is entitled to recover the mine cost and freight, if paid, and the war tax. Is he entitled to recover for cartage, unloading, overhead, and profits on the shortage?

In 4 Sutherland on Damages (4th Ed.), Section 1098, it is said:

"Where a quantity of merchandise is sued for, the retail price would be unjust; for the merchant, in fixing that price, takes into consideration, not only the first cost of the goods, but the store rent, clerk hire, insurance, and probable amount of bad debts, and adds to all these a percentage of profit."

In *Texas & Pac. R. Co. v. Payne,* 15 Tex. Civ. App. 58 (38 S. W. 366), a stock of toys and merchandise of like character was destroyed by fire, while in the possession of a carrier. The

trial court instructed that the measure of damages was the highest market value of said goods, less freight charges at the point of destination. There was evidence tending to show that there was no wholesale market value for the goods at the place of destination. The court said:

"The measure of damages in a case of this kind is the value of the goods in the exact condition they were in at the time of the conversion, with legal interest from the date of the conversion. The proper measure excludes any estimate of profits to be realized from sales at retail, and in a condition different from that in which they were at the time of conversion."

See, also, *Heidenheimer v. Schlett*, 63 Tex. 394.

In *Chicago, R. I. & P. R. Co. v. Broe*, 16 Okla. 25, the plaintiff purchased a carload of wire and nails in St. Louis, and had them shipped to Lawton, Oklahoma. The car arrived at Lawton, but by mistake of the carrier was carried to another station, and replevined by the purchaser, who sued for damages for the detention. The court said:

"The market value, as applied to the case at bar, in contemplation of law, would have been what the different articles of merchandise would have sold for in bulk in the open market at Lawton on the different dates. The law does not contemplate that the carrier shall be liable for the value of merchandise if sold at retail. Such a rule would make the carrier liable, not for the market value of goods as sold in carload lots or in quantities as carried by it, but would also add to and include the profits of the sales at retail, without taking into consideration the costs incident to such sales."

In *Crutchfield v. Hines*, 239 Mass. 84 (131 N. E. 340), the Supreme Judicial Court of Massachusetts had before it a case involving the loss of a shipment of pears in interstate commerce, from Wenatchee, Washington, to Pittsburg, Pennsylvania. The actual value of the pears at the time of shipment at Wenatchee was $963.85. It appeared that, through no fault of the carrier's, the pears, because of their ripened condition, were steadily decreasing in value, and at the time of their arrival, the actual market value was only $500. The court applied the provisions of the Cummins Amendment, and held that:

"The loss of the shipper, subject to the limitation of the act, is to be determined by the value of the goods in the condition in which they should have been delivered by the carrier at their destination."

The recovery was fixed by the value of the entire shipment.

In *Harvey v. Connecticut & P. R. R. Co.*, 124 Mass. 421, the plaintiff made a contract for the transportation and delivery of certain railroad ties, and sued for failure to transport the same. It was held that the railroad company could not be liable for the loss of possible profits which the shipper might have made on resale of the ties.

In *Butler v. Collins*, 12 Cal. 457, the action was to recover damages for trespass and conversion of a stock of goods. The court said:

"The plaintiff could not recover the value of the goods and also the profits which might have been made on their sale."

In *Cincinnati, N. O. & T. P. R. Co. v. Hansford & Son*, 125 Ky. 37 (100 S. W. 251), it appeared that the plaintiff purchased a bill of goods in Rochester, New York, which were lost in shipment. It was admitted that, if the goods had been received by the plaintiff and sold at retail, they would have realized him the gross sum of $422.66; that the freight charge was the sum of $2.50, which had not been paid; that the reasonable profit to the plaintiff on said bill of goods, when sold, would have been the sum of $105.66. The court said:

"But the carrier is not responsible for the profits which the plaintiffs might have made on the goods when resold at Harrodsburg. The measure of recovery in a case like this is the reasonable and fair market value of the goods at the time and place of delivery."

In *Central Georgia R. Co. v. American Coal Co.*, 28 Ga. App. 95 (110 S. E. 320), a coal dealer sought to recover the value of coal that had been lost by the carrier. It appeared that the dealer purchased coal at the mines, and shipped the same to Savannah, where he sold it at wholesale to ships and factories, and that he did not sell coal in small quantities to small consumers, such as householders. The court held that the plaintiff was entitled to recover the market value of the coal at the des-

tination, including its profits on the sales at wholesale in car-load lots, the same as he purchased it.

In *Woonsocket M. & P. Co. v. New York, N. H. & H. R. Co.*, 239 Mass. 211 (131 N. E. 461), recovery was sought for loss of a shipment of high explosive shells. The court recognized the general rule that the loss was to be determined by the value of the goods at the time and place of delivery, and not at the time and place of shipment. The court said:

"If, at the time of the defendant's breach of the contract, the shipper could purchase in the open market substantially similar shells to the ones described, the payment of the market value of the same would, under well settled principles, place it in the same position it would be in if the contract were not broken, and would fully compensate it for its loss."

It also said:

"But market value is not the only test."

In *Quanah, A. & P. R. Co. v. Novit,* (Tex. Civ. App.) 199 S. W. 496, suit was brought to recover for damages to a carload of apples. The court said:

"It is not reasonable that the value of this quantity of apples could be fairly said to be the price at which they might be sold at retail in small quantities by the bushel, dozen, etc.; for certainly there would be some expense, loss, or risk of loss, etc., in peddling out and disposing of a carload of apples in small quantities; and where, as in this instance, the plaintiff did not receive the goods in their damaged or worthless condition at all, so that the expense of retailing them was not incurred, we think the market value of the apples, if sold at retail, would not be the proper measure of recovery."

*State v. Smith,* 31 Mo. 566, was an action for damages to a stock of goods seized under execution. The court said that the retail price was not the proper measure of damages; "for the merchant, in fixing the retail price, takes into consideration, not only the first cost of the goods, but store rent, clerk hire, insurance, and probable amount of bad debts, and adds to all this a percentage for profit. Such a rule is unknown to the law, and, we think, without a precedent."

In *Smith v. New York, O. & W. R. Co.,* 119 Misc. Rep. 506 (196 N. Y. Supp. 521), it appeared that plaintiff purchased a

Oct., 1923] BROWN COAL CO. v. ILLINOIS CENT. R. CO.          571

carload of coal which was shipped in interstate shipment. It
was delivered to another coal dealer by mistake. The evidence
showed the cost of the coal at the mine, the freight, war tax, and
profit on sale in the usual course of business. The court recog-
nized that the case came under the Cummins Amendment, and
cited the *McCaull-Dinsmore* case. The court said:

"The plaintiff did not actually purchase coal to supply the
place of that not delivered, and pay therefor the retail rate; so
the rule applied in *Haskell v. Hunter*, 23 Mich. 305, has no ap-
plication. The true rule is the market price of goods of the
kind specified, in the quantities specified, at the place of des-
tination. *Wendnagle v. Houston*, 155 Ill. App. 664. The plain-
tiff is not entitled to recover his prospective profits upon the re-
sale of the coal at retail, for that would constitute special
damage. The facts which would entitle him to special damages
are not pleaded in his complaint, and consequently cannot be
recovered here."

The question of the proper measure of damages has been
before this court in numerous cases. In *Cobb, B. & Co. v. I. C.
R. R. Co.*, 38 Iowa 601, the question arose where a common car-
rier was tendered a large quantity of oats for transportation.
The oats had been purchased by the plaintiff in Iowa for delivery
in Illinois, under a contract of sale to the government. The
plaintiffs were compelled to purchase other oats, to fulfill their
contract. We said:

"The measure of damages against a carrier for a violation
of his duty or contract in respect to the transportation of prop-
erty should be such as to do justice and award full compensation,
and no more, to the party injured. Plaintiffs must be com-
pensated for the profit they would have realized, which is the
difference between the price they paid or contracted to pay for
the oats, and the price under their contract with the govern-
ment, less freight to Cairo. They must also recover for the sum
they paid, or are liable to pay, for the oats purchased by them,
or agreed to be delivered by the various parties with whom they
contracted."

In that case, the plaintiffs, having previously sold the oats
on contract, were entitled to the benefits of that contract, and to
be made whole.

In *Tuttle-Chapman Coal Co. v. Coaldale Fuel Co.*, 136 Iowa 382, suit was brought to recover damages for breach of a contract to sell and deliver coal. Defendant, by said contract, undertook to sell practically all of the coal mined by it for one year, which plaintiff agreed to accept and pay for at a certain rate "F.O.B. Coaldale, Iowa." The defendant failed to deliver under the contract, and suit was brought for the breach of the contract. We said:

"As plaintiff was a wholesaler, and bought the coal, not for sale in the retail market, but to dealers only, it is manifest that the market value was the wholesale price, and not the retail one, even if the Sioux City market were held to be the governing one. We are not now considering any question of loss of profits, for that is not the case."

We also said that the true rule is "the difference between the contract price and what it would have cost the buyer to have supplied himself by purchase from others with the same amount of articles of equal value. The retail price would, of necessity, give the buyer his profit on the transactions, which might, under some circumstances, be allowed; but this retail price is not the one which fixes the price which the wholesale buyer who goes upon the market must pay. Upon the proposition of the right of plaintiff to recover loss of profits, we make no pronouncement, as that question is not before us."

We must ascertain the measure of damages applicable to the facts of this particular case. The appellee was a wholesaler, as well as a retailer of coal. He had not resold this coal on any contract. He had an abundant supply on hand. In this case, the unit of shipment was a carload of coal,—not a certain number of tons or pounds of coal. The carload was delivered 5,200 pounds short of the amount contained in the original shipment. Appellee suffered the damages caused by receiving a carload containing 104,500 pounds, instead of a carload containing 109,700 pounds. Such was, in fact, appellee's "full actual loss." Can such loss be adequately measured under the facts of this case? Appellee makes no claim for any special damages.

Appellee had not sold this coal. He had not carted or unloaded it, nor had he incurred any "overhead," nor earned any profits in connection with it. He could have purchased an

entire car of 109,700 pounds of the same coal on the market at
Sioux City, to take the place of the car that was short, for the
cost of the coal at the mine, plus war tax, freight, and 30 cents
per ton. He could himself have filled an order for such a car-
load. He was dealing in carload lots at wholesale, as well as in
selling coal by the ton at retail. Suppose he had sold the car in
question just as he received it. He would have sold it as a
carload of coal, containing 104,500 pounds. He would have
made 30 cents profit per ton on it. He could have gone into the
market at Sioux City and purchased a full carload of 109,700
pounds for mine cost, freight, war tax, and 30 cents per ton
additional.

But, as before stated, it was not necessary for appellee to
go into the market to replace the lost coal, for the purposes of
sale either at wholesale or at retail. He had no outstanding
contracts that required this full shipment, in order for him to
fill them. He lost no customers by not having received it. He
had an ample supply in his bins for all current demands. Had
he required this coal, to fill a wholesale contract of sale, his
measure of damages would have been the difference in value
of the carload of coal in the condition in which it was delivered
at the place of destination, and its value as a carload at such
place had it contained the full consignment of 109,700 pounds.
Under such circumstances, this would have been the difference
in cost at the mine of a carload containing 109,700 pounds and
a carload containing 104,500 pounds, plus freight, if the same
had been paid, plus war tax, and 30 cents per ton wholesaler's
profit on the shortage.

If he had sold the coal on contracts, as a retailer, in ton
lots, and had needed the full carload to meet such contracts,
his measure of damages would be the mine cost, plus freight,
if paid, and war tax, and the other items, including retail profits,
necessarily and properly incident to the fulfillment of such re-
tail per ton contract at the place of destination. But neither
of these conditions exist in this case. The appellee had not sold
the coal, either as a wholesaler, by the carload, nor as a retailer,
by the ton. He had earned no profits. He has lost none. He
is not entitled to recover any from appellant. He is not entitled
to make the appellant an involuntary purchaser of the coal, at

either wholesale or retail, nor is he entitled to recover for expenses of cartage, hauling, and "overhead," none of which have been incurred in connection with the coal in question. His measure of recovery, his "full actual loss" at the place of destination, is the cost of the amount of coal, undelivered, at the mine, plus freight, if paid, and war tax; and no more.

The court erred in permitting a recovery upon a different basis than the one herein indicated. We are not to be understood as declaring an inflexible rule that is to be applied to all cases of loss of all or a portion of a shipment, under the Cummins Amendment. As applied to the facts of the instant case,—and we so limit our holding,—the measure of damages herein set forth will compensate appellee for his "full actual loss." The cause will be reversed and remanded for a new trial.—*Reversed and remanded.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.