## CRAIL v. ILLINOIS CENT. R. CO.

(District Court, D. Minnesota, Fourth Division. October 18, 1924.)

**1. Carriers ☞135—Measure of damages for portion of shipment lost in transit stated.**

Where portion of shipment is lost in transit, measure of damages is value of deficiency at time and place at which it should have been delivered, with interest, less transportation charges, if they have not been paid.

**2. Carriers ☞135—Measure of damages for coal lost in transit stated.**

Where portion of car of coal shipped to coal dealer was lost in transit, consignee's measure of damages was value of lost coal in car at place of delivery, and not market price at which coal could be replaced, parties not contemplating replacement by purchase on market.

**3. Carriers ☞131—Special damages for loss of goods in transit must be specially pleaded and proved.**

Special damages sustained by consignee by loss in transit of portion of shipment must be specially pleaded and proved.

**4. Damages ☞23—Liability of party defaulting in performance of contract stated.**

Party defaulting in performance of contract is liable for such damages as usually or naturally result from breach, and for such unusual or special damages as fairly might be anticipated by parties at time contract was made.

At Law. Action by G. I. Crail, doing business as the P. McCoy Fuel Company, against the Illinois Central Railroad Company. Judgment for plaintiff.

Stanley B. Houck, of Minneapolis, Minn., for plaintiff.

Brown & Guesmer and Edwin C. Brown, all of Minneapolis, Minn., for defendant.

George A. Kingsley, of Minneapolis, Minn., and William G. Graves, of St. Paul, Minn., amici curiæ.

CANT, District Judge. The amount immediately involved in this action is small. The action itself is said to be important, because the claim of plaintiff is one of a very numerous class.

In September, 1922, defendant engaged to transport a certain carload of coal, weighing 88,700 pounds, from a point in the state of Illinois to Minneapolis, Minn. Before its arrival at Minneapolis, plaintiff became the owner and consignee of the coal. On arrival in plaintiff's yard at Minneapolis, the place of delivery, it was found that 5,500 pounds of the coal had been lost in transit. At that time the value of the coal in question in carload lots at Minneapolis was $5.75 per ton, plus freight. The retail price of the same coal at Minneapolis was $9.70 per ton, plus freight. It was not possible to go into the market at Minneapolis and purchase 5,500 pounds, and no more, of the same grade of coal, with which to replace that which had been lost, at less than $9.70

per ton, plus freight. Plaintiff was under no necessity of making such replacement, and he made no such purchase. Plaintiff was a coal dealer, making purchases in carload lots from time to time as his necessity required. Those purchases included coal of the kind and quality here in question, of which, on the arrival of this carload, he had sufficient for his needs until the arrival of the next carload of the same kind which should be purchased. In carload lots the coal was worth more at Minneapolis than at the point of shipment. Plaintiff paid no freight on the coal which was lost. Under the facts above stated, what amount is he entitled to recover from the defendant on account of the failure of the defendant to deliver the 5,500 pounds of coal which was lost?

[1] The underlying general rule applicable in such cases is not in dispute. The measure of damages is the value of the commodity which has been lost at the time and place at which it should have been delivered, with interest, less the transportation charges, if they have not been paid. The basic thought in such cases is that the plaintiff shall be made whole. If he has sustained loss or damage, he should be compensated by receipt of the proper equivalent in money.

The dispute arises over the application of the rule, and more specifically the problem is whether the plaintiff should be entitled to recover from defendant the value of the lost coal, as that value would have been in the car, if the contract of carriage had been properly performed, or whether, under the circumstances, plaintiff should recover such an amount as he would be obliged to pay in the market at Minneapolis for coal of a like kind and grade sufficient to replace that which had been lost. Defendant admits a right of recovery in accordance with the first of the two statements last above set forth, and claims that this is the true application of the general rule. Plaintiff claims a right of recovery under the second of said statements, and claims that this is a proper interpretation and application of the rule. A recovery as claimed by plaintiff would be substantially greater in amount than as admitted by defendant.

[2] On delivery of the car to plaintiff, he was entitled to find therein the full 88,700 pounds of coal, or, if some part or all of the coal was not there, he was entitled to an amount in money equivalent to the value of that which was lost. If in some way, on discovery of the loss, defendant had replaced the missing coal in the car, or had placed therein other coal of the same grade and in like amount, plaintiff could no longer complain. Restoration would then have been complete. Each ton of coal so replaced in the car would be worth $5.75, and no more. If the coal was not replaced in the car, payment therefor to plaintiff at the rate of $5.75 per ton would be the money equivalent of the coal, and he would be as well off as if he had that which was lost.

[3] These are the general rules applicable under ordinary circumstances. If, in any case, under peculiar conditions, special damages are sustained, the same must be specially pleaded and proved. This case has no such feature.

The foregoing considerations should dispose of the case in accordance with the claims of the defendant. The many authorities, however, are in much confusion. This is not with respect to the rule as to the measure of damages, but with respect to the application thereof. Cases have arisen under all sorts of conditions, and with respect to all classes of property. Under proper conditions, the claim of special damages has sometimes been pleaded and proved, and sometimes where there has been no such pleading or proof, so far as the opinion discloses, the cases have been treated as if there were, and finally, in specific cases very nearly alike, the courts have entertained widely divergent views.

In accordance with the claims of plaintiff, certain courts have concerned themselves with the question of what it would cost the plaintiff in such cases if he were to go into the market at the place of destination and purchase at the best price obtainable, and at retail, if necessary, a quantity of the commodity involved, of the same grade, and equal in amount to that which was lost, and they announce the measure of damages to be the price which, under such circumstances, the plaintiff would be bound to pay. But that could be the rule only in cases where, under peculiar circumstances, the plaintiff was bound without delay to go into the market and replace the commodity lost. Under such circumstances, the special damages should be specially pleaded and proved. In the case of coal the price paid under such circumstances would always be more than the value of the same quantity of coal in the car.

The contention that plaintiff is entitled to recover the amount which he would be required to pay to replace the coal, which in this case would be the price at retail, is

equivalent to a contention that the plaintiff is entitled to recover the amount for which, if he had the lost coal, the same could be sold at retail. Reason and authority both are against a recovery upon such a basis. That would involve a price which would include the cost of unloading the coal from the car, reloading the same on wagons or trucks, hauling and delivery, insurance, collection, bad debts, overhead expenses, profits, and perhaps other items. Plaintiff has no right under the circumstances to sell the missing coal to the defendant at any such price, when none of these items are involved in the transaction.

With all due respect to the courts which hold that, in ordinary cases of the kind here involved, the plaintiff should recover the cost of replacing the commodity at the point of destination, it may be said that this introduces a fictitious measure of damages, or is an erroneous application of the true rule. Some of the considerations which support this conclusion already appear. A resort to other considerations, more nearly fundamental, may serve to clarify the situation.

[4] In cases of breach of contract the party in default may be required to pay such damages as usually or naturally result from such a breach, and also such unusual or special damages, if any, as fairly might be anticipated by and within the contemplation of the parties at the time the contract was made. In cases such as this which is now before the court, it does not occur with any uniformity that the consignee is either compelled or inclined to go into the market and replace the commodity which has been lost. At least, we have no proof of any such uniformity, and common experience and general information suggests that there is none. The more common experience, certainly with coal and other like commodities, is to let the matter run along, and if necessary make an earlier purchase of another carload in the usual course of business, with which to supply a possible shortage.

The parties, therefore, who were concerned with the shipment in question, had no such contingency in mind as that plaintiff would be compelled to, or would, go into the market at Minneapolis and purchase coal, of the kind and grade in question, sufficient to replace the shortage. No such action was contemplated. No recovery of damages on any such basis should be allowed. There is no such claim in the pleadings. There is no such proof. The case falls within the ordinary class where such damages only as usually or naturally result should be allowed. "The actual loss caused by breach of a contract is the loss of what the contractee would have had if the contract had been performed." Chicago, Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801. Plaintiff, the contractee here, through the default of defendant, lost 5,500 pounds of coal, which he would have had if the contract of carriage had been performed. He was entitled to this coal delivered to him in the car, and on defendant's default to its value there.

In the consideration of this case, a large number of authorities have been consulted. They are concerned mainly with announcing the rule as to the measure of damages and often with discussions which are not pertinent here. In the case at bar we face the application of that rule, and in that work few cases have been of special assistance.

Brown Coal Co. v. Illinois Central R. Co. (1923) 196 Iowa, 562, 192 N. W. 920, through the collation and discussion of authorities and otherwise, is a helpful case, but should not be followed in the conclusion reached, because it does not allow the plaintiff the benefit, if any, of his contract for carriage. Plaintiff had a right to contract for the transportation of the commodity in question and to its value at the point of destination.

Heidritter Lumber Co. v. Central R. Co. of N. J. (N. J. Sup. 1923) 122 A. 691, is in point, but for the reasons hereinbefore set forth is not followed.

Harvey v. Conn. & P. R. R. R. Co., 124 Mass. 421, 26 Am. Rep. 673, is a valuable case for the statements therein as to the proper application of the general rule hereinbefore discussed, and for the statement and discussion as to the pleading and proof of special damages.

Yazoo & M. V. R. Co. v. Delta Grocery & Cotton Co. (Miss. 1924) 98 So. 777, is a case involving damage to a small part of a carload shipment of flour. The court allowed as damages the wholesale cash market value of the flour damaged at the point of destination.

Smith v. N. Y., O. & W. R. Co., 119 Misc. Rep. 506, 196 N. Y. S. 521, is a case where the rule as to special damages is discussed. On the stipulation of the facts it is distinguishable from the case at bar.

As already indicated, plaintiff will be allowed a recovery at the rate of $5.75 per ton for the coal which was lost.